**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DAVID KURTANIDZE,                                                  :        Case No. 23-cv-8716 (PAE)
                                                                  :
                                            *Plaintiff*,           :
                                                                  :
                        - v -                                      :
                                                                  :
MIZUHO BANK, LTD., KENICHI MATSUMOTO,                              :
KINOSHITA SATOSHI, AND JUMPEI YOSHIDA,                             :
                                                                  :
                                            *Defendants*.          :
                                                                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

---

### DEFENDANTS' MOTION TO DISMISS (1) ALL CLAIMS AGAINST DEFENDANTS KENICHI MATSUMOTO, SATOSHI KINOSHITA, AND JUMPEI YOSHIDA PURSUANT TO FRCP 12(b)(5); AND (2) CERTAIN CLAIMS PURSUANT TO FRCP 12(b)(6)

---

EPSTEIN BECKER & GREEN, P.C.
875 Third Avenue
New York, NY 10022
Tel: (212) 351-4620

*Attorneys for Defendants*

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ............................................................................ 1

SUMMARY OF ALLEGATIONS ........................................................................ 3

ARGUMENT ......................................................................................................... 4

I.     Plaintiff Failed to Effect Valid Service of Process on the Individual
       Defendants ................................................................................................... 4

II.    Plaintiff's Claims Pursuant to 42 U.S.C. § 1981 Should be Dismissed *in
       Total*—Including Both the "Discrimination" and "Retaliation" Claims—
       Because That Statute Addresses Only Race Discrimination and Not
       "National Origin" Discrimination as Plaintiff Alleges .............................. 6

III.   All Claims Against Mr. Kinoshita Should be Dismissed Because the
       Complaint Makes Clear That They are Barred by the Applicable Statutes of
       Limitation .................................................................................................... 7

IV.    All Claims Against Mr. Matsumoto Should be Dismissed Because (a) the
       Complaint Makes Clear That They are Barred by the Applicable Statutes of
       Limitation, and (b) Plaintiff Pleads No *Facts* to Support Any Claim Against
       Mr. Matsumoto ........................................................................................... 8

V.     Plaintiff's Claims of "Retaliation" Relating to "National Origin"—
       Including the Claims Under 42 U.S.C. § 1981, the NYSHRL, and the
       NYCHRL—Lack any Cognizable Allegations of "Protected Activity" ... 11

VI.    Plaintiff's Claims of "Familial Status" and "Caregiver Status"
       Discrimination and Retaliation Pursuant to the NYSHRL and NYCHRL
       Should be Dismissed *in Total* for Several Reasons .................................. 13

       A.   Plaintiff's claims of "familial status" and "caregiver status"
            *discrimination* are, as pled, barred by the applicable statutes of
            limitation ............................................................................................. 13

       B.   Plaintiff's claims of "familial status" and "caregiver status"
            *retaliation* are almost entirely barred by the statute of limitation ..... 14

C.  Plaintiff's claims of "familial status" and "caregiver status" retaliation based on the termination of his employment are non-cognizable given the lack of any allegations that establish a causal connection............................14

VII.  Plaintiff's Claims Pursuant to the FMLA, His Eighth and Ninth Causes of Action, Should be Dismissed In Their Entirety for Various Reasons ......................16

A.  Insofar as Plaintiff's FMLA claims are based on a 2020 amendment to the FMLA (the Families First Coronavirus Response Act), the claims should be dismissed because that amendment is inapplicable to the claims as pled..............................................................................................16

B.  Plaintiff's claims of alleged discrimination and retaliation for invoking his FMLA rights should be dismissed insofar as they are based on alleged actions that, as pled, fall outside the statute of limitation .......................................................................................................17

C.  To the extent that Plaintiff's FMLA "retaliation" claim is premised on the termination of his employment, this claim is non-cognizable given the extensive gap between his last alleged "protected activity" and termination..........................................................................................................18

D.  Plaintiff's FMLA "interference" claims should be dismissed because the complaint makes clear that they are barred by the statute of limitation .......................................................................................................19

VIII.  Plaintiff's Claims of "Disability" Discrimination Should be Narrowed to the Alleged Events That Fall Within the Statute of Limitation ........................................20

IX.  Plaintiff's Claim of "Retaliation" Under the New York Labor Law is Time-Barred..................................................................................................................21

X.  Plaintiff's "Aiding and Abetting" Claims Against the Individual Defendants Should be Dismissed to the Extent That the Underlying Claims Are Dismissed..............................................................................................................22

CONCLUSION.......................................................................................................................22

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. Conboy*,
156 F.3d 167 (2d Cir. 1998)..................................................................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................12

*Bonterre v. City of New York*,
2021 WL 4060358 (S.D.N.Y. Sept. 7, 2021)..........................................12

*Chamberlin v. Principi*,
247 F. App'x 251 (2d Cir. 2007) ........................................................15

*Chavis v. Wal-Mart Stores, Inc.*,
265 F. Supp. 3d 391 (S.D.N.Y. 2017)..............................................11, 15

*Cody v. Cnty. of Nassau*,
345 F. App'x 717 (2d Cir. 2009) ........................................................15

*Daniels v. Am. Airlines Inc.*,
2022 WL 493573 (E.D.N.Y. Feb. 17, 2022).........................................21

*Darboe v. Staples, Inc.*,
243 F. Supp. 2d 5 (S.D.N.Y. 2003) ....................................................20

*Fouche v. St. Charles Hosp.*,
64 F. Supp. 3d 452 (E.D.N.Y. 2014) ..................................................11

*Gomez v. City of New York*,
2014 WL 4058700 (S.D.N.Y. Aug. 14, 2014).......................................11

*Juillet v. City of New York*,
180 N.Y.S.3d 840 (Sup. Ct. N.Y. Co. 2022) .......................................8, 14

*Khan v. Khan*,
360 F. App'x 202 (2d Cir. 2010) ........................................................4

*Leung v. New York Univ.*,
2016 WL 1084141 (S.D.N.Y. Mar. 17, 2016) ......................................4

*Lulo v. OTG Mgmt.*,
2022 WL 409224 (S.D.N.Y. Feb. 10, 2022)..........................................7

*McFarlane v. Iron Mountain Inc.*,
   2017 WL 2703574 (S.D.N.Y. June 22, 2017) ........................................................................6

*McNamara v. City of Long Beach*,
   249 F. Supp. 3d 684 (E.D.N.Y. 2017) ......................................................................10, 12, 13

*Mende v. Milestone Tech. Inc.*,
   269 F. Supp. 2d 246 (S.D.N.Y. 2003)....................................................................................4

*In re Merrill Lynch Action Rate Sec. Litig.*,
   758 F. Supp. 2d 264 ...............................................................................................................8

*Moore v. Metro. Transp. Auth.*,
   999 F. Supp. 2d 482 (S.D.N.Y. 2013)........................................................................8, 14, 20

*Offor v. Mercy Med. Ctr.*,
   676 F. App'x 51 (2d Cir. 2017) ..................................................................................8, 17, 19

*Orrego v. Knipfing*,
   564 F. Supp. 3d 273 (E.D.N.Y. 2021) ..................................................................................11

*Potenza v. City of New York*,
   365 F.3d 165 (2d Cir. 2004)..................................................................................................18

*Riddle v. Citigroup*,
   640 F. App'x 77 (2d Cir. 2016) .......................................................................................15, 19

*Rodriguez v. City of New York*,
   644 F. Supp. 2d 168 (E.D.N.Y. 2008) ..................................................................................11

*Selmani v. City of New York*,
   100 A.D.3d 861 (2012) ...........................................................................................................6

*Shultz v. Congregation Shearith Israel of City of New York*,
   867 F.3d 298 (2d Cir. 2017)..................................................................................................19

*Small v. City of New York*,
   2022 WL 376030 (S.D.N.Y. Feb. 7, 2022).....................................................................10, 12

*Strauss v. New York State Dep't of Educ.*,
   26 A.D.3d 67 (3d Dep't 2005) ..............................................................................................22

*Summa v. Hofstra Univ.*,
   708 F.3d 115 (2d Cir. 2013)............................................................................................11, 15

*Cole-Hill ex rel. T.W. v. Colvin*,
   110 F. Supp. 3d 480 (W.D.N.Y. 2015) ..................................................................................8

*Vega v. Hempstead Union Free Sch. Dist.*,
    801 F.3d 72 (2d Cir. 2015)..................................................................................15, 19

*Wang v. Palmisano*,
    51 F. Supp. 3d 521 (S.D.N.Y. 2014)..................................................................7

*Weiss v. La Suisse*,
    260 F. Supp. 2d 644 (S.D.N.Y. 2003)..................................................................7

**Statutes**

42 U.S.C. § 1981 ........................................................................................ *passim*

Families First Coronavirus Response Act........................................................ *passim*

Family and Medical Leave Act ........................................................................ *passim*

Fed. R. Civ. P. 4 ................................................................................................4

Fed. R. Civ. P. 12 ........................................................................................ *passim*

New York City Human Rights Law.................................................................. *passim*

New York Civil Practice Law & Rules § 308..................................................4, 6

New York Labor Law ................................................................................3, 21, 23

New York State Human Rights Law .............................................................. *passim*

## PRELIMINARY STATEMENT

More than two years after his employment with Mizuho Bank, Ltd. ("Mizuho") ended in April 2021, Plaintiff David Kurtanidze has decided to claim that he was subjected to nearly all conceivable forms of purported discrimination and other violations during his employment. Hedging his bets, Plaintiff variously claims he was mistreated because, among other alleged reasons, he is of Georgian national origin, because he allegedly sought to take paternity and caregiver leave, because he allegedly suffered from wrist pain as the result of being "overworked," and because he contracted COVID-19.

Not content to assert this potpourri of allegations against his former employer, Plaintiff—a frequent litigant in recent years[1]—has sought to maximize the disruption, burden, and angst engendered by his outrageous claims by attempting to embroil three individual foreign nationals in this dispute: Defendants Kenichi Matsumoto ("Matsumoto"), Satoshi Kinoshita[2] ("Kinoshita"), and Jumpei Yoshida ("Yoshida") (collectively, the "Individual Defendants"). All three are Japanese nationals who neither reside nor work in the United States.

All claims against the Individual Defendants are subject to dismissal for improper service and on other grounds. Before the case was removed from New York State Supreme Court to this Court, Plaintiff purported to serve his Complaint on the Individual Defendants by dropping a copy of it in the mailroom of Mizuho's New York offices—where none of the Individual Defendants have worked since (at the latest) November 2022. This was not effective service on the Individual Defendants under New York law or under the Hague Convention, and all claims against them should be dismissed pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure ("F.R.C.P.") for that reason. Even

---

[1] *See e.g., 77 Second LLC v. David Kurtanidze* (N.Y. Sup. Ct., Index No.: 655366/2018); *Fresh Press Café, LLC v. 77 Second LLC* (N.Y. Sup. Ct., Index No.: 805/2018); *Capital One National Association v. Kurtan LLC and David Kurtanidze* (N.Y. Sup. Ct., Index No.: 501203/2019); *77 Second LLC v. David Kurtanidze* (N.Y. Sup. Ct., Index No.: 657601/2019); *Cavalry SPV I, LLC v. David Kurtanidze* (N.Y. Sup. Ct., Index No.: 521082/2020); *JPMorgan Chase Bank, N.A., v. David Kurtanidze* (N.J. Super. Ct., Dkt No. ESX-L-007489-20).

[2] Improperly named as "Kinoshita Satoshi" in the caption.

effective service, however, would be futile as against Messrs. Matsumoto and Kinoshita under F.R.C.P. 12(b)(6) because it is apparent that any claims against them are barred by the applicable statutes of limitation ("SOL"). And, as to Mr. Matsumoto, Plaintiff offers only conclusory generalizations insufficient to state any claim.

Further, many of Plaintiffs' claims should be dismissed as to *all* Defendants, as many are time-barred on the face of the Complaint and/or subject to dismissal as a matter of law for various other fundamental reasons:

1.     <u>All</u> of Plaintiff's claims pursuant to 42 U.S.C. § 1981 should be dismissed because the statute does not apply to "national origin" discrimination, which is what Plaintiff alleges.

2.     <u>All</u> of Plaintiff's claims of "retaliation" relating to his "national origin"—including his claims on this basis asserted under the New York State and New York City Human Rights Laws (the "NYSHRL" and "NYCHRL", respectively)—should be dismissed because he does not allege facts indicating that he engaged in any "protected activity" relating to his national origin.

3.     <u>All</u> of Plaintiff's claims of "familial status" and "caregiver status" discrimination and retaliation under the NYSHRL and NYCHRL, respectively, should be dismissed collectively because: (a) the discrimination claims are barred by the applicable SOL; (b) other than the termination of Plaintiff's employment in April 2021, the retaliation claims are barred by the SOL and (c) insofar as the retaliation claims are based on the termination of Plaintiff's employment, they are non-cognizable as a matter of law.

4.     <u>All</u> of Plaintiff's "discrimination," "retaliation," and "interference" claims under the Family and Medical Leave Act ("FMLA") should be dismissed collectively because: (a) the Complaint makes clear that the "discrimination" claims and the "interference" claims are barred by the SOL; (b) the "retaliation" claims, other than Plaintiff's termination of employment, are barred by the SOL; (c) insofar as the "retaliation" claims are premised on termination, they are non-cognizable as a matter of law given, again, the lengthy gap between the alleged "protected activity" and

termination; and (d) additionally, insofar as Plaintiff's FMLA claims are based on the Families First Coronavirus Response Act, an amendment to the FMLA, it is inapplicable to Plaintiff's claims.

5.      Plaintiff's claims of discrimination based on his alleged disability should be <u>partially dismissed and narrowed</u> to the alleged events that fall within the SOL.

6.      Plaintiff's claim of "retaliation" under the New York Labor Law should be dismissed <u>entirely</u> because the Complaint makes clear (a) that Plaintiff's claim under Labor Law § 215(1)(a)(vi) is barred by the two-year SOL, and (b) that Plaintiff is not entitled to relief under Article 6 of the Labor Law.

## <u>SUMMARY OF ALLEGATIONS</u>[3]

Plaintiff was born in the country of Georgia. (Compl. ¶ 7.) He was employed at Mizuho as a Vice President in the Finance Change Group from January 2017 through April 2021. (*Id.*) From January 2017 through June 2020, Mr. Matsumoto led the Finance Change Group. (*Id.* ¶ 10 and Declaration of Kenichi Matsumoto ("Matsumoto Decl.") ¶¶ 3-4.) In or around April 2018, Mr. Kinoshita became Plaintiff's team manager and supervisor. (Compl. ¶ 22.)

In Spring 2019, Plaintiff, expecting a third child, asserts that he met with Mr. Kinoshita and "requested to take a leave of more than eight weeks to care for his children." (*Id.* ¶ 31.) Mr. Kinoshita purportedly denied the request and "suggested that Plaintiff confirm with Human Resources that only the mother is the primary caregiver." (*Id.* ¶ 32.) On June 18, 2019, Plaintiff's child was born. (*Id.* ¶ 33.) Plaintiff asserts that in June 2019, he "emailed Human Resources to request an extended unpaid leave under the FMLA to care for his children and disabled father." (*Id.* ¶ 34.) Plaintiff alleges that the request to care for his children was denied because he was not the primary caregiver, and that Human Resources did not respond to his request to care for his father. (*Id.*)

---

[3] Plaintiff's allegations and factual timeline are accepted as true and accurate as warranted for purposes of this motion to dismiss only.

Upon Plaintiff's return from paternity leave, he was purportedly treated in a "hostile and disrespectful" manner by Mr. Kinoshita, claiming that his work responsibilities were diminished, he was denied a promotion opportunity, and he was denied the opportunity to transfer to a different group—all allegedly in retaliation for taking paternity leave and because he is "not Japanese." (*Id.* ¶¶ 36-51.) Plaintiff's factual allegations in this regard begin in Spring 2019 and end in early 2020.[4] In or around September 2019, Mr. Kinoshita was replaced by Mr. Yoshida as the leader of Plaintiff's team. (*Id.* ¶¶ 43-46.)

Plaintiff also alleges that he was denied requests for an accommodation of his alleged wrist injury in late 2018, December 2019, February 2020, April 2020, and February 2021. (*Id.* ¶¶ 28, 63-80.) Plaintiff's employment was terminated on April 6, 2021. *Id.* ¶ 90.

## ARGUMENT

### I.     Plaintiff Failed to Effect Valid Service of Process on the Individual Defendants.

F.R.C.P. 12(b)(5) provides for the dismissal of a complaint for "insufficient service of process." "On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing that service was sufficient." *Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010). "Conclusory statements that a defendant was properly served are insufficient to overcome a defendant's sworn affidavit that he was never served with process." *Mende v. Milestone Tech. Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003). The Court "must look to matters outside the complaint to determine whether it had jurisdiction." *Id.*

F.R.C.P. 4(e)(1) permits service of process pursuant to the laws of the state in which the district court is located. *Leung v. New York Univ.*, 2016 WL 1084141, at *4 (S.D.N.Y. Mar. 17, 2016). Here, Plaintiff purports to have served the individually named defendants pursuant to CPLR 308(2)

---

[4] Although Plaintiff also alleges (a) that on January 2, 2020, he took the day off to care for his sick son (Compl. ¶ 67), and (b) in March 2021, he took "some days off from the 260-day sick allowance" Mizuho provided to its employees (*id.* ¶¶ 81-85), Plaintiff does not allege that he was denied this time off and, as explained below, neither of these allegations support a claim under the FMLA.

which provides, in relevant part, that "[p]ersonal service upon a natural person shall be made by . . . delivering the summons within the state to a person of suitable age and discretion at the [defendant's] actual place of business." Plaintiff's process server attests that he supposedly served the Individual Defendants "by delivering thereat [1271 6th Avenue, New York, New York 10020] a true copy of each [the summons and complaint] to Michael S. (Co-Worker), a person of suitable age and discretion…[s]aid premises [being] subject's actual place of business/employment within the state." (*See* Declaration of Edward Yennock ("Yennock Decl."), Ex. A.) Plaintiff's process server, however, was incorrect. At the time of purported service—and, indeed, long before that—Mizuho's offices at 1271 Sixth Avenue in New York City (the "New York Office"),[5] ceased to be the "actual place business" for any of the Individual Defendants. (*See, e.g.*, Declaration of Florencia Luccioni ("Luccioni Decl.") ¶¶ 7, 11, 15.) Therefore, the attempted service upon them was ineffective.

Mr. Matsumoto, a subject of Japan, has never been served with the Summons and Complaint ("S&C") in this action, and currently resides and works full time in London, England. (Matsumoto Decl. ¶ 5). Mr. Matsumoto has not worked at the New York Office since June 21, 2020. (*Id*. at ¶ 4). Similarly, Mr. Kinoshita, a subject of Japan, currently resides and works full time in Tokyo, Japan and has never been served with the S&C. (Declaration of Satoshi Kinoshita ("Kinoshita Decl.") ¶ 5). Mr. Kinoshita has not worked at the New York Office since November 18, 2022, the same month that he departed New York State. *Id*. ¶ 4. Finally, Mr. Yoshida, a subject of Japan, also works and lives full time in Tokyo, Japan and has never been served with the S&C. (Declaration of Jumpei Yoshida ("Yoshida Decl." ¶ 5). Mr. Yoshida has not worked in the New York Office since July 23, 2021, and has not returned to New York State since his departure on July 25, 2021. (*Id*. at ¶ 4.)

Plaintiff's attempt to serve the Individual Defendants—all of whom work and reside overseas—at the New York Office did not constitute valid service of process. Pursuant to the New

---

[5] The New York Office includes, among other business entities, a New York branch of Mizuho Bank, Ltd.

York Civil Practice Law and Rules (CPLR), an individual defendant may be served with process by hand-serving a copy of a summons and complaint on a colleague at the defendant's "actual place of business." CPLR 308(6). For a location to qualify as a defendant's "actual place of business," the location "must be where the person is physically present with regularity, and that person must be shown to regularly transact business at that location[.]" *Selmani v. City of New York*, 100 A.D.3d 861, 861 (2012) (citing cases) (holding that service had not been established because "there was no showing that the appellant [a firefighter] was physically present with regularity or regularly transacted business at the Headquarters of the New York City Fire Department…where process was served."). "It follows that *service is invalid if the delivery is made at a place where the defendant maintained his place of business in the past*, but does not do so at the time of service." *McFarlane v. Iron Mountain Inc.*, 2017 WL 2703574, at *2 (S.D.N.Y. June 22, 2017) (emphasis added) (internal quotation and citation omitted).

It has been a long time since any of the Individual Defendants were "physically present with regularity" or "regularly transact[ed] business" at the New York Office where Plaintiff attempted service. As such, the Complaint should be dismissed outright as against each Individual Defendant.

**II.** **Plaintiff's Claims Pursuant to 42 U.S.C. § 1981 Should be Dismissed *in Total*—Including Both the "Discrimination" and "Retaliation" Claims—Because That Statute Addresses Only Race Discrimination and Not "National Origin" Discrimination as Plaintiff Alleges.**

Plaintiff's first and second causes of action, asserted against all Defendants, allege (1) national origin discrimination in violation of 42 U.S.C. § 1981 ("Section 1981") and (2) national origin discrimination and retaliation in violation Section 1981. These claims must be dismissed pursuant to F.R.C.P. 12(b)(6) because Section 1981 does not encompass claims based upon national origin.

Section 1981 provides that "[a]ll persons ... shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981. "To establish a claim under Section 1981, a plaintiff must establish that (1) he is a member of a racial minority; (2) the defendant intended

6

to discriminate against him on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (e.g., making and enforcing contracts)." *Weiss v. La Suisse*, 260 F. Supp. 2d 644, 650 (S.D.N.Y. 2003); *quoting Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). In other words, Section 1981 protects persons from discrimination based on *race*. It is well-settled that Section 1981 does not encompass claims based upon national origin. *See Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998) ("It is established that Section 1981 prohibits discrimination based on race in the making and enforcement of contracts … It is also settled that Section 1981 does not prohibit discrimination on the basis of gender or religion, [and] national origin…" (citations omitted)). Accordingly, Plaintiff's first and second causes of action must be dismissed because Plaintiff has not asserted a claim upon which relief can be granted.

## III. All Claims Against Mr. Kinoshita Should be Dismissed Because the Complaint Makes Clear That They are Barred by the Applicable Statutes of Limitation[6].

All of Plaintiff's claims against Mr. Kinoshita should be dismissed pursuant to F.R.C.P. 12(b)(6) because they are barred by the applicable SOL. "'The lapse of a limitations period is an affirmative defense that a defendant must plead and prove[,]' but '**a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint**.'" *Wang v. Palmisano*, 51 F. Supp. 3d 521, 531 (S.D.N.Y. 2014) (emphasis added) (*quoting Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)). Here, it is apparent on the face of the Complaint that all of Plaintiff's claims against Mr. Kinoshita are time-barred (except for Plaintiff's Section 1981 claims, which are subject to dismissal for the reasons explained in Section II above).

---

[6] Although discretionary, the exercise of supplemental jurisdiction is appropriate where, as here, non-federal claims "are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution" *Lulo v. OTG Mgmt.*, 2022 WL 409224, at *8 (S.D.N.Y. Feb. 10, 2022). Here, the Court is well versed in the claims asserted and is well situated to render a decision dismissing the claims, including under the New York State and City law claims. Efficiency and judicial economy warrant that supplemental jurisdiction be exercised.

In Plaintiff's Complaint, the following paragraphs assert specific factual allegations against Mr. Kinoshita, individually: Paragraphs 22, 36, 31-32, 36-41, and 44-45. Even assuming the truth of these allegations (which are denied to the extent wrongdoing is alleged), all of the facts alleged by Plaintiff against Mr. Kinoshita begin in April 2018 and end in September 2019 (*see generally* Compl. ¶¶ 13-93)—when Plaintiff *affirmatively* alleges that Mr. Kinoshita ceased to be a member of Plaintiff's team and was replaced by Mr. Yoshida. (*Id.* ¶¶ 45-46.) Plaintiff commenced this action on August 8, 2023. Consequently, all of Plaintiff's claims against Mr. Kinoshita that arise under the NYSHRL and CHRL are time-barred because all purported acts by Mr. Kinoshita allegedly occurred more than three years before Plaintiff commenced this action (*i.e.*, before August 8, 2020). *See Moore v. Metro. Transp. Auth.*, 999 F. Supp. 2d 482, 494 (S.D.N.Y. 2013) ("Discrimination claims under the NYSHRL are subject to a three-year statute of limitations."); *Juillet v. City of New York*, 180 N.Y.S.3d 840, 844–45 (Sup. Ct. N.Y. Co. 2022) (holding that the CHRL's three-year statute of limitation barred any claims arising from actions taken or statements made more than three years prior to the filing of the complaint). Accordingly, Plaintiff's third, fourth, fifth, seventh[7] and tenth causes of action as against Kinoshita are barred by the SOL. Further, as FMLA claims are generally subject to a two-year SOL and at most a three-year SOL (*see Offor v. Mercy Med. Ctr.*, 676 F. App'x 51, 53 (2d Cir. 2017)), Plaintiff's eighth and ninth causes of action are also barred by the applicable SOL.

**IV.**     **All Claims Against Mr. Matsumoto Should be Dismissed Because (a) the Complaint Makes Clear That They are Barred by the Applicable Statutes of Limitation, and (b) Plaintiff Pleads No *Facts* to Support Any Claim Against Mr. Matsumoto**

All of Plaintiff's claims against Mr. Matsumoto, should be dismissed pursuant to F.R.C.P. 12(b)(6) as time barred. *In re Merrill Lynch Action Rate Sec. Litig.*, 758 F. Supp. 2d 264; *Cole-Hill ex rel. T.W. v. Colvin*, 110 F. Supp. 3d 480 (W.D.N.Y. 2015). Additionally, Plaintiff does not plead sufficient factual allegations to support any claims, as a matter of law, against Mr. Matsumoto. In his

---

[7] The Complaint does not include a sixth cause of action.

Complaint, Plaintiff asserts the following factual allegations against Mr. Matsumoto: (1) "From the beginning to the end of his employment, Plaintiff noticed that Defendant Head of Group Masumoto rarely spoke to any non-Japanese employees, even ignoring a 'good morning,' unless it was a Japanese employee who greeted him (Compl. ¶ 19); (2) "Matsumoto made the promotion decisions[,]" "favored Japanese nationals for advancement over non-Japanese employees, regardless of qualifications or merit[,]" and "spent most of his time with Japanese employees and rarely acknowledged non-Japanese employees" (*id.* ¶ 25); and (3) in or around September 2019, "Plaintiff observed a Japanese national, Jumpei Yoshida" spending time with Matsumoto and Satoshi Kinoshita and that "[i]t was apparent to Plaintiff that Defendant Mizuho was grooming Defendant Manager Yoshida for promotion" (*id.* ¶¶ 43-44). These allegations, all of which purportedly occurred in or before September 2019, are the *only* factual allegations asserted in the Complaint against Mr. Matsumoto, individually. Thus, all of Plaintiff's causes of action against Mr. Matsumoto should be dismissed, pursuant to F.R.C.P. 12(b)(6), because they (1) are barred by the applicable SOL, and (2) are insufficient, on their face, to make a claim.

First, as with Mr. Kinoshita, all of Plaintiff's causes of action alleging violations of the NYSHRL, the NYCHRL, and FMLA are time-barred because the purported facts alleged in the Complaint regarding Mr. Matsumoto occurred more than three years before Plaintiff commenced this action—i.e., before August 8, 2020.[8] (Compl. ¶¶ 19, 22-25, 43-44). Again, the only causes of action against Mr. Matsumoto that are not time-barred are the Section 1981 claims, which are plainly non-cognizable for the reasons stated.

Second, Plaintiff's claims against Mr. Matsumoto are *further* subject to dismissal because Plaintiff has failed to plead *facts*—as opposed to conclusory generalities—to support any claim

---

[8] It stands to reason that there would be no allegations pertaining to Mr. Matsumoto in the Complaint that post-date August 8, 2020. That is consistent with Mr. Matsumoto's Declaration offered solely in support of the F.R.C.P. 12(b)(5) motion for dismissal based on ineffective service, which notes that he ceased working in the New York Office as of June 21, 2020. (Matsumoto Decl. ¶ 4.)

against Mr. Matsumoto. The allegations against Mr. Matsumoto appear at paragraphs 19, 25, and 44 of the Complaint. Although the Court "must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor … [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Small v. City of New York*, 2022 WL 376030, at \*2-3 (S.D.N.Y. Feb. 7, 2022) (internal citations and quotations omitted). Although legal conclusions can provide the framework of a complaint, they must be supported by specific factual allegations – "[a] plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *McNamara v. City of Long Beach*, 249 F. Supp. 3d 684, 688 (E.D.N.Y. 2017). In *McNamara*, the Court stated:

> [O]nly complaints that state a "plausible claim for relief" can survive a motion to dismiss. A claim has facial plausibility when **the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged**. The plausibility standard is not akin to a probability requirement but asks for more than a sheer possibility that defendant acted unlawfully. **Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line" between possibility and plausibility of "entitlement to relief**."

*Id.* (emphasis added).

Here, Plaintiff's broad allegations that Mr. Matsumoto "rarely spoke to any non-Japanese employees" and "favored Japanese nationals for advancement over non-Japanese employees," without any concrete reference to any discriminatory employment actions, are insufficient to support any of Plaintiff's ten causes of action against Mr. Matsumoto. These allegations are conclusory statements that do not provide Defendants or the Court with sufficient "factual content" to allow the Court "to draw the reasonable inference that [Mr. Matsumoto] is liable for the misconduct alleged." *McNamara*, 249 F. Supp. 3d at 688.

**V.      Plaintiff's Claims of "Retaliation" Relating to "National Origin"—Including the Claims Under 42 U.S.C. § 1981, the NYSHRL, and the NYCHRL—Lack any Cognizable Allegations of "Protected Activity."**

Plaintiff's second and third causes of action – which allege national origin discrimination and retaliation in violation of Section 1981[9] and national origin discrimination and retaliation in violation of the NYSHRL and the NYCHRL, respectively – must be dismissed, as to *all Defendants*, because Plaintiff has failed to sufficiently plead that he engaged in a cognizable "protected activity" that resulted in retaliation.

A Section 1981 retaliation claim includes the same substantive elements as a Title VII retaliation claim, namely, (1) participation in a protected activity; (2) defendant's knowledge of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. *Fouche v. St. Charles Hosp.*, 64 F. Supp. 3d 452, 457–58 (E.D.N.Y. 2014); *Gomez v. City of New York*, 2014 WL 4058700, at *5 (S.D.N.Y. Aug. 14, 2014). Similarly, to establish a *prima facie* case of retaliation under the NYSHRL and the NYCHRL, Plaintiff must demonstrate that: (1) he engaged in a protected activity; (2) his employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity. *Chavis v. Wal-Mart Stores, Inc.*, 265 F. Supp. 3d 391, 406–07 (S.D.N.Y. 2017); *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013).

"The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Rodriguez v. City of New York*, 644 F. Supp. 2d 168, 192 (E.D.N.Y. 2008); *Orrego v. Knipfing*, 564 F. Supp. 3d 273, 284 (E.D.N.Y. 2021). In his Complaint, the only allegation in support of the requisite elements – is Plaintiff's statement that "Defendants retaliated against Plaintiff

---

[9] Again, as noted in Section II above, Plaintiff's claims under Section 1981 must also be dismissed because Section 1981 does not prohibit discrimination on the basis of national origin, which is what Plaintiff has alleged.

for complaining of national original discrimination." (Compl. ¶¶ 103, 112). This is not a factual allegation; it is a conclusion.

When considering mere "conclusions" asserted by a party in its pleadings, the U.S. Supreme Court has stated that when considering a motion to dismiss, a court should "begin by identifying pleadings that, *because they are no more than conclusions*, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint*, they must be supported by factual allegations*." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (emphasis added). Similarly, the Southern District of New York recently stated that although a court must accept all facts alleged in the complaint as true, "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' A complaint must therefore contain more than "naked assertion[s] devoid of further factual enhancement." *Small*, 2022 WL 376030, at *2–3. Furthermore, "[p]leadings that contain 'no more than conclusions ... are not entitled to the assumption of truth' otherwise applicable to complaints in the context of motions to dismiss." *Id.*; *see also Bonterre v. City of New York*, 2021 WL 4060358, at *6 (S.D.N.Y. Sept. 7, 2021) (although the plaintiff alleged in the complaint that after she "voiced her protests and complaints, she was met with inaction and escalated instances of harassment," the Court held that these alleged "undated 'complaints'" were "too vague to provide a basis for a retaliation claim").

In other words, to survive a motion to dismiss, Plaintiff must allege that he engaged in a "protected activity" and, furthermore, that allegation "must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *McNamara*, 249 F. Supp. 3d at 688. Here, Plaintiff has pled zero facts to support his conclusion that "Defendants retaliated against Plaintiff for complaining of national original discrimination."[10] Accordingly, because Plaintiff has failed to sufficiently plead

---

[10] This conclusory statement contains no actual facts that would provide Defendants and the Court with an understanding of Plaintiff's purported complaint(s) concerning national origin discrimination, such as when Plaintiff made these

all the requisite elements of his second and third causes of action, those causes of action must be dismissed pursuant to F.R.C.P. 12(b)(6).

**VI.    Plaintiff's Claims of "Familial Status" and "Caregiver Status" Discrimination and Retaliation Pursuant to the NYSHRL and NYCHRL Should be Dismissed *in Total* for Several Reasons.**

Plaintiff's fourth and fifth causes of action allege (a) "familial" status discrimination and retaliation in violation of the NYSHRL and the NYCHRL and (b) "caregiver status" discrimination and retaliation in violation of the NYSHRL and the NYCHRL, respectively, against all Defendants. These claims are duplicative of one another. Both the NYSHRL and the NYCHRL protect against discrimination and retaliation on the basis of familial status – the NYSHRL refers to it as "familial status" while the NYCHRL refers to it as "caregiver status." *See* N.Y. Exec. Law § 296(a); N.Y.C. Admin. Code § 8-101.

However, all of Plaintiff's allegations, except for the termination of his employment, are barred by the applicable SOL. Plaintiff's claims that his termination from Mizuho was motivated by retaliatory animus should also be dismissed given the absence of any factual allegations and the significant time gap (nearly two years) connecting his purported "protected activity" and his termination from Mizuho.

**A.    Plaintiff's claims of "familial status" and "caregiver status" *discrimination* are, as pled, barred by the applicable statutes of limitation.**

In support of his claim for familial and caregiver status discrimination in violation of the NYSHRL and NYCHRL, Plaintiff alleges that in the spring of 2019 he requested to take a paternity leave of more than eight weeks in order to be the primary caregiver to his three children. (Compl. ¶

---

purported complaints, who these purported complaints were made to, or whether Defendants were aware of these complaints (*i.e.*, were aware that Plaintiff had engaged in a protected activity). *See McNamara*, 249 F. Supp. 3d at 688 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged…. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.'").

29.) According to Plaintiff, Mizuho denied his request because "the primary caregiver is supposed to be the mother of the children." *Id.* ¶¶ 31-32. Plaintiff further alleges that, in August and September 2019, upon his return from paternity leave, Plaintiff was treated differently for taking leave, that his work responsibilities were diminished as a result of taking leave, and that he was denied a promotion opportunity in retaliation for taking leave. *Id.* ¶¶ 29-51.

Based upon the foregoing, Plaintiff's fourth and fifth causes of action, which are subject to a three-year SOL, are time-barred because these alleged acts occurred in 2019, long before August 8, 2020 (three years before Plaintiff commenced this action). *See Moore*, 999 F. Supp. 2d at 494; *see also Juillet*, 180 N.Y.S.3d 840, 844–45. Accordingly, Plaintiff's claims of *discrimination* on the basis of familial and caregiver status in violation of the NYSHRL and NYCHRL, are barred by the SOL and must be dismissed pursuant to F.R.C.P. 12(b)(6).

**B.      Plaintiff's claims of "familial status" and "caregiver status" *retaliation* are almost entirely barred by the statute of limitation.**

Similarly, Plaintiff's fourth and fifth causes of action, which allege familial status and caregiver status *retaliation* in violation of the NYSHRL and NYCHRL, are also time-barred because, with the exception of the termination of his employment, all of the purported retaliatory "adverse employment actions" occurred in 2019, over three years before this action was commenced. *See* Compl. ¶¶ 29-51. Accordingly, these claims should be dismissed to the extent premised on the purported "adverse employment actions" alleged in paragraphs 29-51 of the Complaint.

**C.      Plaintiff's claims of "familial status" and "caregiver status" retaliation based on the termination of his employment are non-cognizable given the lack of any allegations that establish a causal connection.**

Finally, the only viable "adverse employment action" that occurred within the limitations period, Plaintiff's termination from Mizuho's employ, must also be dismissed. The claim is not cognizable given the extensive gap between the alleged protected activity (Plaintiff taking paternity leave) and his separation from Mizuho. Plaintiff took paternity leave in the summer of 2019. (Compl.

¶¶ 29-51.) Mizuho terminated Plaintiff from its employ on April 6, 2021 – nearly two years later. (*Id.* ¶ 90.) Despite this time gap between Plaintiff's protected activity and his termination, Plaintiff alleges that he was terminated because "he had the audacity to pursue his right to family." (*Id.* ¶ 91.) However, Plaintiff does not advance *any* facts that support a causal connection between his paternity leave and his termination from Mizuho years later.

To establish a prima facie case of retaliation under the NYSHRL and the NYCHRL, Plaintiff must demonstrate that: (1) he engaged in a protected activity; (2) his employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity. *Chavis*, 265 F. Supp. 3d at 406–07; *Summa*, 708 F.3d at 125. Given the significant time gap between the two, Plaintiff cannot establish a causal connection based on temporal proximity. Without temporal proximity, Plaintiff must plead some facts that might infer a causal connection exists between his paternity leave and his termination. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) ("As for causation, a plaintiff must plausibly plead a connection between the act and his engagement in protected activity … A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action."); *Riddle v. Citigroup*, 640 F. App'x 77, 79 (2d Cir. 2016) ("Although temporal proximity between protected activity and adverse employment action can support an inference of discriminatory intent … the Supreme Court has suggested that the temporal proximity must be 'very close'…" (internal citations omitted)); *Cody v. Cnty. of Nassau*, 345 F. App'x 717 (2d Cir. 2009) (finding that five months between a protected activity and the adverse employment action was insufficient temporal proximity to support employee's Title VII retaliation claim); *Chamberlin v. Principi*, 247 F. App'x 251 (2d Cir. 2007) (finding five-month gap between protected activity and adverse action insufficient to establish causal connection required for retaliation claim).

Given the extensive time gap, there is no indirect evidence of a retaliatory motive and Plaintiff's complaint is devoid of allegations of direct evidence connecting his paternity leave and

Mizuho's decision to terminate him years later. Consequently, even accepting all well-pleaded factual allegations as true, Plaintiff has not stated and could not state the requisite causal connection. Accordingly, Plaintiff's fourth and fifth causes of action should be dismissed in their entirety.

**VII.   Plaintiff's Claims Pursuant to the FMLA, His Eighth and Ninth Causes of Action, Should be Dismissed In Their Entirety for Various Reasons.**

Plaintiff's eighth cause of action alleges discrimination and retaliation in violation of the FMLA, as amended by the Families First Coronavirus Response Act (the "FFCRA"), while Plaintiff's ninth cause of action alleges interference in violation of the FMLA (again, as amended by the FFCRA). As detailed below, these causes of action must be dismissed for the following reasons: (1) insofar as Plaintiff's FMLA claims are based on the FFCRA, these claims should be dismissed because that amendment is inapplicable to Plaintiff's claims; (2) Plaintiff's claims of alleged discrimination and retaliation for invoking his FMLA rights should be dismissed insofar as they are based on actions that fall outside the applicable SOL (with the exception of Plaintiff's ultimate termination); (3) to the extent that Plaintiff's FMLA "retaliation" claim is premised on the termination of his employment, this claim is non-cognizable given the extensive gap between his last alleged "protected activity" and his termination; and (4) Plaintiff's FMLA "interference" claims should be dismissed because they are barred by the applicable SOL.

**A.   Insofar as Plaintiff's FMLA claims are based on a 2020 amendment to the FMLA (the Families First Coronavirus Response Act), the claims should be dismissed because that amendment is inapplicable to the claims as pled.**

The FFCRA required certain employers to provide their employees with paid sick leave or expanded family and medical leave for specified reasons related to COVID-19.[11] The FFCRA expired on December 31, 2020.[12] In his Complaint, Plaintiff alleges that he and his family contracted COVID-

---

[11] *See* U.S. Department of Labor, *Families First Coronavirus Response Act: Employer Paid Leave Requirements* https://www.dol.gov/agencies/whd/pandemic/ffcra-employer-paid-leave#_ftnref1 (last visited Oct. 19, 2023).

[12] *See* U.S. Department of Labor, *Temporary Rule: Paid Leave Under the Families First Coronavirus Response Act*, at thttps://www.dol.gov/agencies/whd/ffcra#:~:text=The%20requirement%20that%20employers%20provide,31%2C%202020 (last visited Oct. 19, 2023).

16

19 "in or about March 2021," but that he was "forced to work and participate in Zoom calls even though he was extremely ill." (Compl. ¶¶ 82, 86.) Plaintiff further alleges that (a) he was entitled to "Emergency FMLA Leave," (b) Defendants "interfered with Plaintiff's FMLA rights by requesting that he work during his entitled leave", and (c) Defendants retaliated against Plaintiff for requesting leave, "which ultimately led to the termination of his employment." (*Id.* ¶¶ 142-143, 149.) However, these alleged actions occurred in 2021, after the FFCRA had expired. Accordingly, Plaintiff's eighth and ninth causes of action should be dismissed to the extent premised on the FFCRA.

> **B.   Plaintiff's claims of alleged discrimination and retaliation for invoking his FMLA rights should be dismissed insofar as they are based on alleged actions that, as pled, fall outside the statute of limitation.**

Generally, FMLA claims are subject to a two-year SOL. However, the period extends to three years when the violation is willful—i.e., when the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited. *See Offor*, 676 F. App'x at 53. In his eighth cause of action, which alleges discrimination and retaliation in violation of the FMLA (as amended by the FCFRA), Plaintiff does not allege that Defendants knew or showed reckless disregard for the matter of whether its conduct was prohibited. (*See* Compl. ¶¶ 141-146.) Accordingly, the two-year SOL should be applied. Plaintiff was terminated on April 6, 2021, and he commenced this action on August 8, 2023, over two years later. Accordingly, Plaintiff's eighth cause of action alleging discrimination and retaliation in violation of the FMLA should be dismissed in its entirety.

However, *even if* the three-year SOL were applied, Plaintiff's allegations concerning discrimination and retaliation would *still* be time-barred, with the exception of a claim of retaliation based on the termination of his employment. The following paragraphs of the Complaint assert facts regarding Plaintiff's leaves of absence (or his requests for leave) under the FMLA: Paragraphs 34-

35, 36-42, 43-51, 63-65,[13] 72-73, and 74-75. The aforementioned factual allegations begin in June 2019 and end in February 2020. Even if, for the sake of argument, the three-year SOL was applied, the only allegation that would not be time-barred is Plaintiff's claim that his termination was in retaliation for taking medical leaves of absence. However, as discussed in subsection C below, to the extent Plaintiff's FMLA "retaliation" claim is premised on the termination of his employment, this claim is non-cognizable and should be dismissed.

### C.   To the extent that Plaintiff's FMLA "retaliation" claim is premised on the termination of his employment, this claim is non-cognizable given the extensive gap between his last alleged "protected activity" and termination.

The only timely "adverse employment action" that Plaintiff alleges occurred in connection with his FMLA claims – the termination of his employment – must also be dismissed because the claim is not cognizable given the extensive gap between the alleged protected activity (Plaintiff requesting FMLA leave) and Plaintiff's termination. Plaintiff requested FMLA leave at various times beginning in June 2019 and ending in "early 2020." (*See* Compl. ¶¶ 34-35, 63-65, 72.) Plaintiff's employment was not terminated until April 6, 2021 – a year later. (*Id.* ¶ 90.) Despite this time gap between Plaintiff's protected activity and his termination, Plaintiff alleges that he was terminated <u>because</u> he had the "audacity to pursue his right to family and medical leaves of absence, and because Plaintiff suffered from a disability." (*Id.* ¶¶ 90-91.) But Plaintiff does not allege any facts that support a causal connection between his requests for FMLA leave and his termination over a year later.

To establish a *prima facie* claim for retaliation in violation of the FMLA, Plaintiff must establish that: 1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *Potenza v. City of New York*, 365 F.3d

---

[13] In Paragraphs 67-71 of the Complaint, Plaintiff also alleges that on January 2, 2020, he took an approved day off "to drive his son to the hospital to treat a post-surgical fever." It is unclear from the allegations in the Complaint if these "approved" day of leave was taken under the FMLA. Regardless, this allegation is also time barred.

165, 168 (2d Cir. 2004). Given the lack of temporal proximity between Plaintiff's requests for leave and his termination, and the absence of any other facts relating the two, Plaintiff has not adequately pled facts that give rise to an inference that a causal connection exists between his FMLA requests and his termination. *See Vega*, 801 F.3d at 90; *Riddle*, 640 F. App'x 77, 79 (2d Cir. 2016) ("Although temporal proximity between protected activity and adverse employment action can support an inference of discriminatory intent … the temporal proximity must be 'very close'…" (internal citations omitted)). Plaintiff is, therefore, unable to state a colorable claim of retaliation for requesting leave. Because no other facts remain to support Plaintiff's claims in violation of the FMLA, Plaintiff's eighth cause of action should be dismissed in its entirety.

### D.      Plaintiff's FMLA "interference" claims should be dismissed because the complaint makes clear that they are barred by the statute of limitation.

Likewise, to the extent Plaintiff's ninth cause of action purports to assert claims under the FMLA, as opposed to the FFCRA, all of those claims are barred by the applicable SOL (regardless of whether the two-year or three-year SOL is applied). To prevail on a claim of interference with FMLA rights, a plaintiff must establish: 1) that he is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that he was entitled to take leave under the FMLA; 4) that he gave notice to the defendant of his intention to take leave; and 5) that he was denied benefits to which he was entitled under the FMLA. *Shultz v. Congregation Shearith Israel of City of New York*, 867 F.3d 298, 307 (2d Cir. 2017). As noted in subsection B above, Plaintiff requested FMLA leave at various times beginning in June 2019 and ending in "early 2020." (*See* Compl. ¶¶ 34-35, 63-65, 72.) Plaintiff commenced this action on August 8, 2023. Accordingly, all of Plaintiff's allegations regarding his FMLA requests, including any alleged denial of those requests, must be dismissed pursuant to F.R.C.P. 12(b)(6) because they are barred by the applicable SOL, whether it be two-year or three-years. *See Offor*, 676 F. App'x at 53.

Although Plaintiff's Complaint alleges that, in March 2021, Plaintiff took leave due to COVID-19 (*see* Compl. ¶¶ 82-85), these allegations do not support Plaintiff's claim for interference in violation of the FMLA because (a) Plaintiff does not assert that he requested FMLA leave in March 2021 and (b) Plaintiff does not assert he was denied FMLA leave in March 2021. Rather, Plaintiff states that he informed his manager that "he was taking some days off from the 260-day sick allowance" provided by Mizuho to its employees. *Id.* ¶¶ 81-85. Although Plaintiff's use of sick days does not automatically preclude application of the FMLA, "[t]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Darboe v. Staples, Inc.*, 243 F. Supp. 2d 5, 17 (S.D.N.Y. 2003). Here, Plaintiff requested "some days off" from the 260 sick days Mizuho afforded to its employees. This information is insufficient to have apprised Mizuho that Plaintiff's COVID-19 illness (or his family's COVID-19 illness) should have qualified as a "serious health condition" that would make him eligible for leave under the FMLA. Furthermore, Plaintiff's Complaint does not allege that he was denied any benefits to which he was entitled under the FMLA.

Accordingly, Plaintiff's purported March 2021 leave due to COVID-19 cannot serve as a basis for his interference claim and, therefore, his ninth cause of action must be dismissed in its entirety pursuant to F.R.C.P. 12(b)(6).

**VIII.  Plaintiff's Claims of "Disability" Discrimination Should be Narrowed to the Alleged Events That Fall Within the Statute of Limitation.**

Plaintiff's tenth cause of action alleges disability discrimination and retaliation in violation of the NYSHRL and the NYCHRL. Again, claims under the NYSHRL and NYCRHL are subject to a three-year SOL. *Moore*, 999 F. Supp. 2d at 494. Plaintiff alleged he made accommodation requests regarding his alleged wrist injury in late 2018 (Compl. ¶ 28), December 2019 (*Id.* ¶¶ 63-66), February 2020 (*Id.* ¶ 74), April 2020 (*Id.* ¶ 77), and February 2021 (*Id.* ¶ 80). Additionally, Plaintiff alleges that in March/April 2021, he was still recovering from COVID-19 and suffering from brain fog, so

he requested a reasonable accommodation of conducting less important meetings through e-mail so he could think through his responses. (*Id.* ¶¶ 82-88.) Finally, Plaintiff alleges that he was terminated in April 2021 "because Plaintiff suffered from a disability." (*Id.* ¶¶ 90-91.)

The disability discrimination claims should be dismissed to the extent premised on allegations that predate August 8, 2020 (three years prior to the commencement of this action) and are thus barred by the SOL. The only timely allegations that would remain would be: (a) Plaintiff's purported February 2021 request to "pace his work and take breaks" throughout the day due to his alleged wrist injury, as alleged in paragraph 80 of the Complaint, (b) Plaintiff's purported March/April 2021 request to conduct less important meetings through e-mail due to his alleged COVID-19 brain fog, as alleged in paragraphs 87-88 of the Complaint, and (c) Plaintiff's April 6, 2021 termination.

## IX. Plaintiff's Claim of "Retaliation" Under the New York Labor Law is Time-Barred.

In his eleventh cause of action, Plaintiff alleges that he was retaliated against for "exercising his rights to take accrued vacation in violation of provisions of the Labor Law, including but not limited to Labor Law §§ 190(1), 193(1), 198-C, and 215(1)(a)(vi)." (Compl. ¶ 166.)

Of the Labor Law provisions inappositely listed in the Complaint, § 215(1)(a)(vi) is the only operative one insofar as it prohibits the retaliation that Plaintiff alleges. Claims under § 215 are subject to a two-year SOL. *Daniels v. Am. Airlines Inc.*, 2022 WL 493573, at *6 (E.D.N.Y. Feb. 17, 2022) ("New York Labor Law § 215 ... provides a two-year statute of limitations for retaliatory terminations arising out of employee complaints about employer violations of the state's labor laws"). Plaintiff's employment was terminated on April 6, 2021, and he commenced this action on August 8, 2023 – more than two years later. Accordingly, Plaintiff's claim that Defendants retaliated against him for "exercising his rights to take accrued vacation" is barred by the appliable SOL and must be dismissed.[14]

---

[14] Although Plaintiff references Labor Law §§ 190(1), 193(1) and 198-C, he does so only in the context of his assertion that he was subjected to retaliation for exercising his rights under these provisions (one of which is merely a definitions

**X.    Plaintiff's "Aiding and Abetting" Claims Against the Individual Defendants Should be Dismissed to the Extent That the Underlying Claims Are Dismissed.**

Finally, to the extent any of the above causes of action are dismissed, in whole or in part, whether based upon the SOL or other grounds, Plaintiff's seventh cause of action, which alleges aiding and abetting discrimination and retaliation in violation of the NYSHRL and the NYCHRL against the Individual Defendants, should also be narrowed and/or dismissed accordingly. *See Strauss v. New York State Dep't of Educ.*, 26 A.D.3d 67, 73 (3d Dep't 2005).

## <u>CONCLUSION</u>

For the reasons stated herein, Defendants respectfully request that the Court grant the following relief in addition to any other relief the Court deems just and proper:

A.    With respect to the Individual Defendants:

    1.    Dismiss all claims against the three Individual Defendants for failure to effectuate service.

    2.    Dismiss all claims against Defendants Matsumoto and Yoshida on the grounds that all claims against them are time-barred.

    3.    Dismiss all claims against Defendant Matsumoto because Plaintiff has failed to plead sufficient facts to support any claim against Defendant Matsumoto.

B.    With respect to all Defendants

    1.    Dismiss Plaintiff's overlapping <u>First</u> and <u>Second</u> Causes of Action <u>entirely</u>, given that 42 U.S.C. § 1981 does not apply to "national origin" discrimination or retaliation, and also because Plaintiff has failed to allege that he engaged in any protected activity in relation to his national origin to support a retaliation claim.

    2.    Dismiss the distinct <u>retaliation</u> claims subsumed within Plaintiffs' <u>Third</u> Cause of Action because Plaintiff has failed to allege that he engaged in any protected activity related to national origin. (The Third Cause of Action would remain in place only as to the distinct "discrimination" claim.)

    3.    Dismiss Plaintiff's overlapping <u>Fourth</u> and <u>Fifth</u> Causes of Action <u>entirely</u> because: (a) the familial status" and "caregiver status" discrimination claims are untimely; (b) other than the termination of employment, all other adverse actions are time barred; and (c) while timely, a claim that Plaintiff's employment termination was retaliatory is non-cognizable as a matter of law.

---

section). He does not claim that he was denied his rights under any of these other provisions, and certainly does not assert any factual allegations to support any such claim.

4. Dismiss Plaintiff's <u>Seventh</u> Cause of Action for "aiding and abetting" <u>to the extent that the underlying claims are dismissed</u>.[15]

5. Dismiss Plaintiff's <u>Eighth</u> Cause of Action <u>entirely</u> because his FMLA "retaliation" claims are untimely except as premised on termination and, insofar as the "retaliation" claims are premised on termination, they are non-cognizable.

6. Dismiss Plaintiff's <u>Ninth</u> Cause of Action <u>entirely</u> because Plaintiff's FMLA "interference" claims are untimely and because the Families First Coronavirus Response Act is inapplicable to Plaintiff's claims.

7. Dismiss Plaintiff's <u>Tenth</u> Cause of Action <u>in part</u>, specifically by dismissing the disability "discrimination" claims subsumed within this Cause of Action to the extent the claims are untimely as premised on Plaintiff's alleged requests for an accommodation of his alleged disability "in or around the end of 2018" (Compl. ¶ 28), "in or around the end of December 2019" (*Id.* ¶¶ 63-66), "in or around February 2020" (*Id.* ¶¶ 74-75), and "on or about April 6, 2020" (*Id.* ¶¶ 77-78).

8. Dismiss Plaintiff's <u>Eleventh</u> Cause of Action <u>entirely</u> because Plaintiff's claim of "retaliation" under the New York Labor Law is barred by the applicable two-year statute of limitation.

Dated: October 20, 2023
New York, NY

Respectfully submitted,

**EPSTEIN BECKER & GREEN, P.C.**

*/s/ Edward M. Yennock*
Edward M. Yennock
Jessica Giambrone Palmese
Sierra N. Hennessey
875 Third Avenue
New York, NY 10022
Tel: (212) 351-4620

*Attorneys for Defendants*

---

[15] This request should effectively be moot given the separate grounds for dismissing all claims against the Individual Defendants.