UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID KURTANIDZE,

               Plaintiff,

    -against-

MIZUHO BANK, LTD.

               Defendants.

Case No. 23-cv-8716 (PAE)

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT**

---

GODDARD LAW PLLC
39 Broadway, Suite 1540
New York, NY 10006
Tel: 646 964-1178

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.    PRELIMINARY STATEMENT ............................................................................... 1

II.    STATEMENT OF FACTS ....................................................................................... 2

III.    LEGAL STANDARD............................................................................................... 2

IV.    ARGUMENT ........................................................................................................... 3

    A.    Plaintiff States a Claim for Discrimination in Violation of Section 1981 .................... 4

        1.    The Amended Complaint Supports An Inference of Discrimination. ...................... 4

        2.    Section 1981's Definition of Race Includes Ethnicity and Ancestry. ...................... 7

    B.    Plaintiff States a Claim for Retaliation in Violation of Section 1981............................ 9

    C.    The Amended Complaint States Claims for Race and National Origin
        Discrimination, and Retaliation under the NYSHRL and NYCHRL ........................... 11

    D.    The Amended Complaint States Claims for Discrimination and Retaliation
        Based on Caregiver Status and Gender.......................................................................... 12

    E.    The Amended Complaint States a Claim for Gender Discrimination
        and Retaliation ............................................................................................................... 15

    F.    The Amended Complaint States Claims for Retaliation in Violation
        of the FMLA and Interference in Violation of the FMLA........................................... 16

        1.    Retaliation under the FMLA ................................................................................... 16

        2.    Interference Under the FMLA ................................................................................. 19

    G.    The Amended Complaint States Claims for Disability Discrimination
        and Retaliation ............................................................................................................... 20

    H.    Breach of Contract ........................................................................................................ 21

V.    CONCLUSION........................................................................................................ 22

# TABLE OF AUTHORITIES

## Cases

*Adames v. Mitsubishi Bank, Ltd.*,
   751 F. Supp. 1548 (E.D.N.Y. 1990) ........................................................................ 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................................. 2

*Avent v. Progressive Cas. Ins. Co.*, No.
   19-cv-10907 (JGK), 2021 WL 168500 (S.D.N.Y. Jan. 19, 2021) .......................... 5

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................. 2

*Brown v. City of Oneonta*,
   221 F.3d 329 (2d Cir. 1999) ................................................................................. 4

*Chambers v. TRM Copy Ctrs. Corp.*,
   43 F.3d 29 (2d Cir. 1994) ................................................................................. 3, 6

*Coleman v. B.G. Sulzle, Inc.*,
   402 F. Supp. 2d 403 (N.D.N.Y. 2005) ................................................................ 12

*Cooper v. Templeton Invs.*,
   No. 22-2763-cv, 2023 WL 3882977 (2d Cir. 2023) ............................................. 4

*Cooper v. Templeton*,
   629 F. Supp. 3d 223 (S.D.N.Y. 2022) ................................................................... 4

*Cruz v. Coach Stores. Inc.*,
   202 F.3d 560 (2d Cir. 2000) ................................................................................. 9

*Dotson v. Pfizer, Inc.*,
   558 F.3d 284 (4th Cir. 2009) ............................................................................. 18

*Energy Intelligence Grp., Inc. v. Scotia Capital (USA), Inc.*,
   Civ. No. 16-cv-617, 2017 WL 432805 (S.D.N.Y. Jan. 30, 2017) ......................... 2

*Henry v. NYC Health & Hosp. Corp.*,
   18 F. Supp. 3d 396 (S.D.N.Y. 2014) ..................................................................... 4

*Hicks v. Baines*,
   593 F.3d 159 (2d Cir. 2010) ................................................................................. 9

*Iqbal v. Hasty*,
   490 F.3d 143 (2d Cir. 2007) ................................................................................. 3

*Jackson v. N.Y. Office of Mental Health*,
　　No. 11–CV–7832, 2012 WL 5862741 (S.D.N.Y. Nov. 15, 2012) ........................................ 12

*Jute v. Hamilton Sundstrand Corp.*,
　　420 F.3d 166 (2d Cir. 2005)................................................................................................... 9

*Lefkowitz v. Bank of New York*,
　　679 F. Supp. 2d 229 (S.D.N.Y. 2009).................................................................................... 3

*Lightfoot v. Union Carbide Corp.*,
　　110 F.3d 898 (2d Cir. 1997).................................................................................................. 12

*Littlejohn v. City of N.Y.*,
　　795 F.3d 297 (2d Cir. 2015)................................................................................................... 5

*Patterson v. Cty. of Oneida, N.Y.*,
　　375 F.3d 206 (2d Cir. 2004)................................................................................................... 4

*Potenza v. City of New York*,
　　365 F.3d 165 (2d Cir. 2004)................................................................................................. 16

*Quinby v. West LB AG.*,
　　Civ. No. 04-cv-7406, 2007 WL 1153994 (S.D.N.Y. April 19, 2007) ...................................... 3

*Roman Catholic Diocese of Rockville Centre v. General Reinsurance Corp.*,
　　Civ. No. 16-cv-02063, 2016 WL 5793996 (S.D.N.Y. Sept. 23, 2016)..................................... 2

*Runyon v. McCrary*,
　　427 U.S. 160 (1976)................................................................................................................ 8

*Ruotolo v. City of N.Y.*,
　　514 F.3d 184 (2d Cir. 2008)................................................................................................... 2

*Saint Francis College v. Al-Khazraji*,
　　481 U.S. 604 (1987)................................................................................................................ 8

*Sotomayor v. City of New York*,
　　862 F. Supp. 2d 226 (E.D.N.Y. 2012), aff'd, 713 F.3d 163 (2d Cir. 2013)............................ 12

*Szewczyk v. City of New York*,
　　Civ. No. 15-cv-918, 2016 WL 3920216 (E.D.N.Y. July 14, 2016)............................................ 2

*Tsirelman v. Daines*,
　　794 F.3d 310 (2d Cir. 2015)................................................................................................... 2

*Vega v. Hempstead Union Free Sch. Dist.*,
　　801 F.3d 72 (2d Cir. 2015)..................................................................................................... 5

*Walsh v New York City Hous. Auth.*, 828 F3d 70 (2d Cir 2016) .................................................. 3

Statutes

29 C.F.R. § 825.220 ................................................................................................... 19

29 U.S.C. § 2615 ....................................................................................................... 19

42 U.S.C. § 1981 ......................................................................................................... 1

New York City Human Rights Law, New York City Administrative Code § 8-107 *et seq.* .......... 1

New York State Human Rights Law, New York State Executive Law § 296 *et seq.* .................... 1

## I. PRELIMINARY STATEMENT

Plaintiff David Kurtanidze was an English and Georgian-speaking, Caucasian employee of international Japanese bank, Defendant Mizuho Bank, Ltd. ("Defendant Mizuho"), based on New York City. Defendant Mizuho's Japanese[1] employees, who dominated the business, regularly discriminated against non-Asian employees in New York, like Plaintiff, by conducting business discussions exclusively in Japanese, thereby excluding them from communications critical to the performance of their jobs. The exclusive use of the Japanese language necessarily excluded white employees from decision-making, networking, and bonding opportunities that could lead to promotions.

Throughout his tenure with Defendant Mizuho, Plaintiff regularly objected to the Japanese exclusionary environment  that business discussions be conducted in English, particularly business discussions concerning his job function. In retaliation, Defendant Mizuho marginalized his work and ultimately terminated his employment.

Defendant Mizuho subjected Plaintiff to discrimination and retaliation based on his race in violation of 42 U.S.C. § 1981 ("Section 1981"). Defendants further subjected Plaintiff to discrimination based on his race, national origin, and gender in violation of the New York State Human Rights Law, New York State Executive Law § 296 *et seq*. ("NYSHRL"); and the New York City Human Rights Law, New York City Administrative Code § 8-107 *et seq*. ("NYCHRL").

---

[1] In the Amended Complaint and in this brief, the term "Japanese" with respect to a person refers to a person who is both ethnically Japanese and was raised in Japan. "Non-Japanese" is anyone who is not both ethnically Japanese and raised in Japan. If a person was raised in the United States, the Amended Complaint or this brief may refer to the person's ethnicity, but will specify that the person is American. Neither the Amended Complaint nor this brief refers to anyone who is ethnically Japanese and raised outside Japan, so there are no references to ethnically Japanese people who are, by Plaintiff's definition, "non-Japanese."

## II.    STATEMENT OF FACTS

For a complete recitation of the facts, Plaintiff respectfully refers the Court to the Plaintiff's Amended Complaint.[2]

## III.    LEGAL STANDARD

It is well-settled that when deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must assume the veracity of well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. *See Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015; *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). To survive a motion to dismiss under Rule 12(b)(6), "an Amended Complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See also Energy Intelligence Grp., Inc. v. Scotia Capital (USA), Inc.*, Civ. No. 16-cv-617, 2017 WL 432805, at *1 (S.D.N.Y. Jan. 30, 2017). As such, the plaintiff must allege facts that "raise a right of relief above the speculative level on the assumption that all allegations in the Amended Complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555-56. *See also Roman Catholic Diocese of Rockville Centre v. Gen. Reins. Corp.*, Civ. No. 16-cv-02063, 2016 WL 5793996, at *3 (S.D.N.Y. Sept. 23, 2016); *Szewczyk v. City of New York*, Civ. No. 15-cv-918, 2016 WL 3920216, at *2 (E.D.N.Y. July 14, 2016) ("A claim is plausible when the plaintiff pleads factual content that allowed the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

This does not, however, require heightened pleading standards; rather, the Second Circuit applies a flexible plausibility standard, "which obliges a pleader to amplify a claim with some

---

[2] Plaintiff's Amended Complaint shall be referred to as "Am. Comp. ¶__."

factual allegations in those contexts where such amplification is needed to render the claim plausible, rather than to mandate a 'universal standard of heightened fact pleading.'" *Lefkowitz v. Bank of New York*, 679 F. Supp. 2d 229, 248 (S.D.N.Y. 2009), *quoting Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). The Second Circuit has emphasized the significance of viewing employment discrimination cases under a totality of the circumstance analysis. *Walsh v New York City Hous. Auth*., 828 F3d 70, 76 (2d Cir 2016). "No one piece of evidence need be sufficient, standing alone, to permit a rational finder of fact to infer that defendant's employment decision was more likely than not motivated in part by discrimination." *Id*.

Because employers generally do not specify how they are discriminating against an employee based on race, national origin, or otherwise, Courts must rely on a totality of the circumstances. "'[T]he court must be alert to the fact that employers are rarely so cooperative as to include a notation in the personnel file that their actions are motivated by factors expressly forbidden by law.'" *Quinby v. West LB AG*., Civ. No. 04-cv-7406, 2007 WL 1153994, at *6 (S.D.N.Y. April 19, 2007), *quoting Chambers v. TRM Copy Ctrs. Corp*., 43 F.3d 29, 37 (2d Cir. 1994).

## IV.    ARGUMENT

Viewed in a light most favorable to Plaintiff, this Court must conclude that Plaintiff alleges sufficient facts to support the Amended Complaint.[3] In its Memorandum of Law in Support of its Motion to Dismiss ("Defendant's Brief"), Defendant Mizuho adopts a formalistic and narrow reading of the Amended Complaint; arguing, in essence, that Plaintiff failed to use magic words to state his claims so his claims should be dismissed. In so doing, Defendant

---

[3] Plaintiff does not oppose Plaintiff's motion to dismiss with respect to the Fourth and Eleventh Causes of Action.

3

Mizuho urges this Court *not* to view the facts in the light most favorable to Plaintiff and to ignore the totality of the circumstances pled by Plaintiff in the Amended Complaint.

**A.  Plaintiff States a Claim for Discrimination in Violation of Section 1981**

Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 410 (S.D.N.Y. 2014), *quoting Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 224 (2d Cir. 2004). To establish a claim under Section 1981, a plaintiff must allege: (1) that he or she is a member of a protected class; (2) the defendant's intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities. *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 1999).

Plaintiff is a white male who was born and raised in the country of Georgia, and who was discriminated against on the basis of his race by Defendant Mizuho when it passed him over for promotion (Am. Compl. ¶¶ 19, 20, 22, 40, 41, 46), excluded him from meetings and discussions pertinent to his job (*id.* ¶ 21, 37), denied him family and medical leaves of absence (*id.* ¶ 24, 31, 74, 77), and assigned him increasingly administrative and low-level work before finally terminating his employment (*id.* ¶¶ 39, 59).

1.  <u>The Amended Complaint Supports An Inference of Discrimination.</u>

In Defendant's Brief, Defendant Mizuho argues that the Amended Complaint fails to "warrant an inference of discriminatory or retaliatory animus underlying the claimed adverse employment actions," so Plaintiff's race discrimination claims under Section 1981, the NYCHRL, and the NYSHRL should be dismissed. (Defendant's Brief p. 5) However, "[a]t the motion to dismiss stage, 'the plaintiff does not need substantial evidence of discriminatory intent.'" *Cooper v. Templeton*, 629 F. Supp. 3d 223, 230 (S.D.N.Y. 2022), *aff'd sub nom, Cooper v. Templeton Invs.*, No. 22-2763-cv, 2023 WL 3882977 (2d Cir. 2023), *quoting Littlejohn v. City*

*of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015). "Rather, 'what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified [for the job], suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" *Id.*; *see Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). For his Section 1981 claims, Plaintiff must "allege facts that would permit the Court to infer … that race was a but-for cause" of the adverse employment actions. *Avent v. Progressive Cas. Ins. Co.*, No. 19-cv-10907 (JGK), 2021 WL 168500, at *4 (S.D.N.Y. Jan. 19, 2021).

In the Amended Complaint, Plaintiff describes an environment that greatly favored Japanese-speaking employees over all others. Among other things: the Head of Group largely ignored non-Japanese employees and favored Japanese employees for advancement over non-Japanese employees regardless of qualifications or merit (Am. Compl. ¶¶ 16, 22); less experienced Japanese employees were regularly promoted ahead of qualified, more experienced non-Japanese employees (Am. Compl. ¶¶ 19, 20, 22, 40, 41, 46); and, although Japanese fluency was not a job requirement,[4] important business issues were discussed exclusively in Japanese, even when non-Japanese speaking employees were present and regardless of whether the non-Japanese speaking employees needed to know the content of those discussions to do their jobs. (Am. Compl. ¶ 21)

Despite this exclusionary, Japanese-centric workplace, Defendant Mizuho argues that Plaintiff should have alleged that Defendant Mizuho made more remarks "that could be viewed as reflecting discriminatory animus."[5] (Defendant's Brief p. 6) Defendant's Brief incorrectly

---

[4] This is not alleged in the Amended Complaint, but it is implicit in the fact that Defendant Mizuho employed Plaintiff and many others who did not speak Japanese.

[5] Naturally, Plaintiff would have included more derogatory remarks if Defendant did not exclude him from communications altogether by speaking Japanese.

states that the only remark alleged in the Amended Complaint is that "Manager Kinoshita told Plaintiff that he should take courses on how to become 'more like a Japanese employee.'" (Defendant's Brief p. 6 *quoting* Am. Compl. ¶ 36.) In fact, the Amended Complaint contains several remarks by Japanese managerial employees that cast non-Japanese employees and Eastern-European employees in unfavorable light.

- Plaintiff's Japanese manager criticizes him for speaking English with an eastern-European accent, while American or Japanese accents are not similarly criticized (Am. Compl. ¶ 23);

- Plaintiff's Japanese manager admonishes Plaintiff not to speak unless the manager instructs him to speak, while American and Japanese employees are not similarly admonished (Am. Compl. ¶ 34);

- Plaintiff's Japanese manager informs Plaintiff that exercising his FMLA rights by requesting an extended family leave was viewed negatively by Defendant Mizuho because Japanese employees rarely take family leave. (Am. Compl. ¶ 35);

- Plaintiff's Japanese manager repeatedly criticizes Plaintiff for taking paternity leave, because Japanese employees prioritize work and non-Japanese employees do not. (*Id.*)

Notwithstanding the above, discriminatory remarks are not the only way of demonstrating discriminatory animus. "[M]ore favorable treatment of employees not in the protected group" also supports an inference of discrimination. *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994). Among other things, the Amended Complaint alleges that:

- Plaintiff and other non-Japanese employees were excluded from applying for promotions (Am. Compl. ¶ 20);

- Japanese employees lacking relevant work experience were promoted over Plaintiff and other non-Japanese employees (*id.*);

- Tonya Hamer and her manager, both non-Japanese, were both relegated to dead-end jobs and overlooked for promotions over careers spanning 16 and 20 years, respectively (Am. Compl. ¶ 47);

- Japanese manager Jumpei Yoshida treated Japanese employees respectfully and regarded them in a friendly manner, yet was disrespectful and cold to non-Japanese employees (Am. Compl. 51);

- Japanese manager Jumpei Yoshida assigned redundant and unnecessary tasks to non-Japanese employees, and harangued them with frequent texts, emails, and in-person reminders, yet refrained from this behavior towards Japanese employees (*id.*);

- Defendant Mizuho tolerated refusals by Japanese employees to work with non-Japanese employees, including Plaintiff, and, when confronted by the Japanese employee's ethnic animus, dismissed it as just "how [the Japanese employee] is." (Am. Compl. ¶¶ 56-58)

All of these allegations evidence discriminatory animus by Defendant Mizuho against non-Japanese employees.

2. <u>Section 1981's Definition of Race Includes Ethnicity and Ancestry.</u>

In Defendant's Brief, Defendant Mizuho derides the correction in the First and Second Causes of Action of the Amended Complaint, changing them from Section 1981 claims based on national origin to claims based on race, (Defendant's Brief pp. 5-8), noting that this Court may consider the original Complaint in deciding the immediate motion to dismiss. Plaintiff welcomes

this: the change between the two pleadings reflects the limitations implicit in language drift, not an attempt to fit a square peg into a round hole.

Section 1981 states:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Although Section 1981 does not itself use the word "race," the Supreme Court has construed the section to forbid all "racial" discrimination in the making of contracts. *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987), *citing Runyon v. McCrary*, 427 U.S. 160, 168, 174–175 (1976).

The concept of race in the mid-19th century, however, is very different from our modern concept. Applying the 19th century concept of race, the Supreme Court had "little trouble in concluding that Congress intended [Section 1981] to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *Saint Francis College*, 481 U.S. at 613. Accordingly, a plaintiff can bring a claim under Section 1981 if he is "subjected to intentional discrimination based on his race, ethnic characteristics or ancestry, rather than solely on the place or nation of his origin." *Adames v. Mitsubishi Bank, Ltd.*, 751 F. Supp. 1548, 1559 (E.D.N.Y. 1990), *citing Saint Francis College*, 481 U.S. at 613.

The allegations in the First and Second Causes of Action in the complaint and the Amended Complaint are substantively the same: Defendant Mizuho discriminated and retaliated against Plaintiff because he is white and has the ethnic characteristics (i.e., accent speaking voice) of an

Eastern European. Trapped by a modern concept of race, Plaintiff mistakenly referred to this as "national origin" in the original complaint.

The First Cause of Action of the Amended Complaint states a claim for discrimination in violation of Section 1981. Therefore, Defendant's Motion to Dismiss the First Cause of Action should be denied.

### B.  Plaintiff States a Claim for Retaliation in Violation of Section 1981

A claim for retaliation in violation of Section 1981 entails "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010), *quoting Jute v. Hamilton Sundstrand Corp*., 420 F.3d 166, 173 (2d Cir. 2005). "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores. Inc.*, 202 F.3d 560, 566 (2d Cir. 2000). It is "clear" that a protected activity need not "rise to the level of a formal complaint in order to receive statutory protection." *Id.*

As set forth in the Amended Complaint, Plaintiff regularly and throughout his tenure with Defendant Mizuho, opposed the exclusion of non-Japanese speaking employees from business discussions by requesting that the discussions be conducted in English – the common language among his co-workers. (Am. Compl. ¶ 21.) Plaintiff "observed that all important corporate issues were discussed exclusively in Japanese, even when non-Japanese speaking employees were present." (*Id.*) He "opposed the exclusion of non-Japanese speaking employees from these important discussions by requesting repeatedly that Defendant Mizuho conduct business discussions in English." (*Id.*) Plaintiff even clarified why he wanted Defendant Mizuho to conduct business discussions in English – because they were "discussing issues that affect his job and, therefore, he needed to know what they were talking about." (*Id.*)

Notwithstanding the fact that speaking Japanese only in a diverse environment effectively excludes from the discussion non-Japanese employees like Plaintiff, Defendant argues that protesting the exclusion of non-Japanese employees from business discussions "does not qualify as a complaint regarding discrimination on the basis of race as required by Section 1981." (Defendant's Brief p. 9; emphasis omitted.) This argument, however, ignores the 19th century definition of race implicit in Section 1981. The Japanese language is characteristic of the Japanese ethnicity; i.e., race under Section 1981. Lacking knowledge of the Japanese language is characteristic of ethnicities other than Japanese; i.e., other races under Section 1981. Plaintiff protested the use of a language that, by 19th century standards, excluded his non-Japanese race from participating in critical business discussions. Therefore, Plaintiff's protests were necessarily complaints about one race excluding others from critical business communications.

In addition, Defendant Mizuho knew both that it conducted "all important corporate issues" in Japanese and that Plaintiff opposed the practice. From the subject matter being discussed in Japanese – which includes "all important corporate issues" – one can infer that management-level employees of Defendant Mizuho's New York office were among those whom Plaintiff requested to speak English.

Among other things, Plaintiff suffered the following adverse employment actions as a result of Defendant Mizuho's retaliation in violation of Section 1981:

- Plaintiff  was shut out of promotion and transfer opportunities, despite his qualifications (Am. Compl. ¶¶ 19, 20, 22, 40, 41, 46);

- His role was marginalized such that he was assigned administrative and low-level tasks like checking spreadsheet data (id. ¶¶ 39, 59);

- He was scapegoated for real and imaginery missteps (id. ¶ 57, 66);

- He was left out of meetings critical to his job performance (id. ¶¶ 21, 37  ); and

10

- His employment was terminated (*id.* ¶ 87);

The Second Causes of Action of the Amended Complaint states  legally cognizable claims for Section 1981 retaliation. Therefore, Defendant's Motion to Dismiss the Second Causes of Action of the Amended Complaint should be denied.

### C.  The Amended Complaint States Claims for Race and National Origin Discrimination, and Retaliation under the NYSHRL and NYCHRL

Defendant argues that Plaintiff's claims for race and national origin discrimination and retaliation under NYSHRL and NYCHRL are barred by the three-year statute of limitations. (Defendant's Brief p. 11.) This is a misreading of the Amended Complaint and ignores the continuing violation doctrine.

The Amended Complaint describes discriminatory conduct that continued throughout Plaintiff's tenure at Defendant Mizuho, up through the termination of his employment on April 6, 2021. These include:

- Excluding Plaintiff from communications concerning his job by speaking Japanese when Defendant Mizuho discussed important business issues (Am. Compl. ¶ 21);

- Excluding Plaintiff from networking opportunities with senior managers, who all but ignored non-Japanese employees (*id.* ¶¶ 16, 22);

- Passing Plaintiff over for promotion despite his superior experience and regulatory knowledge because he was not Japanese (*id*. ¶¶ 19, 20, 40, 41, 46); and

- Affording fewer opportunities for advancement to non-Japanese employees including Plaintiff (*id*. ¶¶ 20, 22, 46).

The specific instances of race and national origin that occurred more than three years before Plaintiff filed the complaint are timely under the "continuing violation" exception. *E.g., Lightfoot*

11

*v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997) (recognizing the continuing violation exception to Title VII claims); *Coleman v. B.G. Sulzle, Inc.*, 402 F. Supp. 2d 403, 412-13 (N.D.N.Y. 2005) (continuing violation doctrine is applicable to Section 1981 claims); *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 250 (E.D.N.Y. 2012), aff'd, 713 F.3d 163 (2d Cir. 2013) (same for NYSHRL and NYCHRL claims).

The continuing violation exception "makes violations that took place prior to the expiration of the statute of limitations actionable if they are part of a continuous policy and practice of discrimination and at least one act in that policy and practice took place within the limitations period." *Jackson v. N.Y. Office of Mental Health*, No. 11–CV–7832, 2012 WL 5862741, at *2 (S.D.N.Y. Nov. 15, 2012). As the discriminatory actions described above took place prior to the expiration of the statute of limitations and are part of a continuing policy and practice of discrimination along with the earlier violations, the earlier violations are actionable.

The Amended Complaint states legally cognizable claims for race and national origin discrimination and retaliation. Therefore, Defendant's Motion to Dismiss the Third Cause of Action of the Amended Complaint should be denied.

### D.  The Amended Complaint States Claims for Discrimination and Retaliation Based on Caregiver Status and Gender

In the Amended Complaint, Plaintiff alleges that Defendant Mizuho discriminated against him based on his status as a caregiver of his father, who was paralyzed from the neck down following a stroke. (Am. Compl. ¶ 24) Plaintiff alleges that his mother was unable to care for his father by herself, so "Plaintiff had to help with his father's care whenever possible." (*Id.*)

Defendant argues that because Plaintiff's requests for Family and Medical Leave Act ("FMLA") to care for his father were ignored by Defendant Mizuho in June 2019 and early 2020, his claim for discrimination and retaliation based on caregiver status is untimely. (Defendant's

Brief p. 13-14.) This supposition ignores the facts implicit in being a caregiver for someone with quadriplegia, the ongoing discriminatory animus of Defendant Mizuho, and the allegations of the Amended Complaint. Moreover, Defendant Mizuho misquotes the NYCHRL to argue that Plaintiff is not a caregiver under the NYCHRL. (Defendant's Brief n. 9)

As a preliminary matter, under the plain language of the NYCHRL, Plaintiff qualifies as a caregiver. The NYCHRL defines "caregiver" as " a person who provides direct and ongoing care for a minor child or a care recipient." N.Y.C. Admin. Code 8-102. It defines "care recipient" as "a person with a disability who: (i) is a covered relative, **or** a person who resides in the caregiver's household and (ii) relies on the caregiver for medical care or to meet the needs of daily living. *Id.* (emphasis added). Finally, NYCHRL defines "covered relative" as "a caregiver's . . . parent…." *Id.*

In Defendant's Brief, Defendant Mizuho argues that Plaintiff had to allege that his father lived with him. (Defendant's Brief n. 9) A reading of the plain language of the definition of "care recipient," however, belies Defendant Mizuho's claim. Simply, Plaintiff's father meets the first element of the definition of "care recipient" because he is a covered relative. His place of residence is irrelevant to the inquiry.

Next, Defendant Mizuho argues that Plaintiff's father is not a "care recipient" because Plaintiff did not allege that his father "relies on [him] for medical care or to meet [his] needs of daily living." (Defendant's Brief n. 9.) This is an inappropriately narrow reading of the Amended Complaint. People who are paralyzed from the neck down, by virtue of their condition, must rely upon others for medical care  or to meet their needs of daily living. Plaintiff alleges that his mother was unable to care for his father by herself and that he had to help whenever he was able. (Am. Compl. ¶ 24.) In short, the Amended Complaint frames Plaintiff's actions in terms of Plaintiff's obligation to help his parents, rather than his father's reliance upon Plaintiff for care. Viewed in

the light most favorable to Plaintiff, this allegation must be interpreted to mean that Plaintiff's father relied upon Plaintiff for medical care or to meet his needs of daily living.

Further, due to the nature of Plaintiff's father's affliction, his reliance upon Plaintiff and Plaintiff's caregiver status did not change from when his father became paralyzed until Plaintiff's employment with Defendant Mizuho was terminated. Similarly, Defendant Mizuho's animus towards employees requesting or taking medical leaves of absence continued throughout Plaintiff's employment. Defendant Mizuho continued discriminating against Plaintiff due to his caregiver status through his termination. Specifically, as set forth in the Amended Complaint:

- Defendant Mizuho denied Plaintiff's requested family leave because "a man . . . cannot be the primary caregiver" (Am. Compl. ¶ 29);

- Defendant Mizuho marginalized Plaintiff by not including him in meetings relevant to his job and by removing him from key projects (Am. Compl. ¶¶ 21, 37, 86); and

- Defendant Mizuho threatened Plaintiff's job by informing him that it takes a dim view of employees who use leave time (Am. Compl. ¶¶ 35, 77);

Similarly, Defendant Mizuho's retaliation against Plaintiff because of his caregiver status continued through to the termination of his employment. As a result of Plaintiff's requesting FMLA leave to care for his father, Defendant Mizuho:

- Exhibited hostility toward Plaintiff upon his return from parental leave (Am. Compl. ¶ 33);

- Assigned him trivial and administrative tasks, such as organizing issue trackers and reconciling spreadsheets (Am. Compl. ¶¶ 39, 59);

- Passed Plaintiff over for promotions and transfer opportunities for which he was qualified (id. ¶¶  , 44);

- Micromanaged and gaslighted Plaintiff (id. ¶ 55); and

14

- Scapegoated Plaintiff for real and imaginary issues (*id.* ¶¶ 57, 66).

Moreover, the continuing violation exception, discussed in Section C, *supra*, applies to NYCHRL claims. As the animus against employees requesting and taking protected leaves of absences continued through Plaintiff's date of termination, Defendant's animus manifested prior to the expiration of the statute of limitations. Further, as the animus was part of a continuing policy and practice of discrimination along with the earlier violations, the earlier violations are actionable.

Finally, Defendant Mizuho argues that due to a lack of temporal proximity between the requested leaves to care for Plaintiff's father and Plaintiff's termination, Plaintiff has not alleged a causal connection to support a claim for retaliation. (Defendant's Brief p. 15.) This argument ignores the fact that termination was only the last in a string of retaliatory action taken by Defendant Mizuho.

The Fifth Cause of Action of the Amended Complaint states a legally cognizable claim for caregiver status discrimination and retaliation. Therefore, Defendant's Motion to Dismiss the Fifth Cause of Action should be denied.

### E.  The Amended Complaint States a Claim for Gender Discrimination and Retaliation

The Amended Complaint alleges that Defendant Mizuho discriminated and retaliated against Plaintiff due of his gender, because Defendant Mizuho embraced gender stereotypes under which males could or should fill a caregiver roles. This cause of action is essentially the same as the cause of action for discrimination based on Plaintiff's caregiver status. Just as the Court should deny Defendant Mizuho's Motion to Dismiss Plaintiff's claim for caregiver status discrimination and retaliation, the Court should deny Defendant Mizuho's Motion to Dismiss Plaintiff's claim for gender discrimination and retaliation.

Defendant Mizuho embraced a gender stereotype pursuant to which males could not be caregivers. Plaintiff, however, was a male caregiver to his father, which did not change from when his father became paralyzed until Plaintiff's employment with Defendant Mizuho was terminated. Defendant Mizuho continued discriminating against Plaintiff due to his status as a male caregiver through his termination, as described more fully in Section D, *supra.*

Similarly, Defendant Mizuho's retaliation against Plaintiff because of his status as a male status, described more fully in Section D, *supra,* continued through to the termination of his employment. The continuing violation exception, discussed in Section C, *supra*, applies to this. As the gender animus against Plaintiff continued through Plaintiff's date of termination, Defendant's animus manifested prior to the expiration of the statute of limitations. Further, as the animus was part of a continuing policy and practice of discrimination along with the earlier violations, the earlier violations are actionable.

The Sixth Cause of Action of the Amended Complaint states a legally cognizable claim for gender discrimination and retaliation. Therefore, Defendant's Motion to Dismiss the Sixth Cause of Action should be denied.

**F. The Amended Complaint States Claims for Retaliation in Violation of the FMLA and Interference in Violation of the FMLA**

       1. Retaliation under the FMLA

To state a claim for retaliation under the FMLA, a plaintiff must allege that (1) he exercised his rights protected under the FMLA, (2) he was qualified for his position, (3) he suffered an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *See Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004). Defendant Mizuho argues that it cannot have retaliated against Plaintiff

because it prevented him from exercising his rights protected under the FMLA. (Defendant's Brief pp. 17-18)

While it is true that Defendant Mizuho denied Plaintiff his rights under the FMLA by refusing him family and medical leaves to which he was entitled, leaves of absence are the effect of exercising one's rights under the FMLA. The initial exercise of FMLA rights is giving notice to one's employer that one needs an FMLA leave. Aa set forth in the Amended Complaint, Plaintiff repeatedly requested FMLA leave and, therefore, repeatedly exercised his rights under the FMLA. Specifically,

- In December 2018 and the Spring of 2019, Plaintiff requested family leave in excess of his eight weeks of paternity leave to care for his newborn child and father, who was recovering from a stroke (Am. Compl. ¶¶ 24, 28);

- In December 2019,  he requested intermittent FMLA leave to attend physical therapy sessions for his back and wrists (*id.* ¶ 62);

- In early 2020, Plaintiff requested family leave again to care for his disabled father (*id.* ¶ 69);

- In the Spring of 2020, Plaintiff requested intermittent FMLA leave in the form of short breaks through the day to rest his wrists (*id.* ¶ 74);

- In February 2021, Plaintiff requested intermittent FMLA leave in the form of pacing his work and taking breaks throughout the day to rest his wrists (*id.* ¶ 77)

As set forth in the Amended Complaint, Defendant Mizuho retaliated against Plaintiff for exercising his rights under the FMLA by requesting FMLA leave. For example, Defendant Mizuho:

- Ignored or denied Plaintiff's requests for FMLA leave (Am. Compl. ¶¶ 24, 28, 62, 69, 74, 77);

17

- Derided and mocked Plaintiff when he requested intermittent FMLA leave for physical therapy treatments (*id.* ¶¶ 62, 74);

- Told Plaintiff that his physical "issues" were a "deficiency" for Defendant Mizuho (*id.* ¶ 77);

- Assigned him trivial and administrative tasks, such as organizing issue trackers and reconciling spreadsheets (Am. Compl. ¶¶ 39, 59);

- Passed Plaintiff over for promotions and transfer opportunities for which he was qualified (*id.* ¶¶ 19, 20, 22, 40, 41, 44, 46);

- Micromanaged and gaslighted Plaintiff (*id.* ¶ 55); and

- Scapegoated Plaintiff for real and imaginary issues (*id.* ¶¶ 57, 66).

As set forth in 29 C.F.R. § 825.302(c), '[a]n employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA—qualifying leave, and the anticipated timing and duration of the leave." "The form of notice does not require any "magic words", and in fact, does not even need to invoke the FMLA. *Dotson v. Pfizer, Inc.,* 558 F.3d 284, 293 (4th Cir. 2009) (noting the "generally-accepted position that no 'magic words' are necessary to invoke the protections of the FMLA.") Simply put, Plaintiff exercised his rights under the FMLA when he requested time off to care for his newborn child, requested time off to care for his father, and the numerous times he requested time off or a flexible schedule to treat his wrist condition.[6] Moreover, the fact that Plaintiff regularly wore wrist splints in the office effectively notified Defendant Mizuho that his condition was chronic.

---

[6] In Defendant's Brief, Defendant Mizuho dismisses the severity of Plaintiff's wrist injury, calling it a "strained wrist." If this were an accurate description of Plaintiff's condition, it would be the first documented case of a contagious "strained wrist," as so many of Plaintiff's coworkers suffered from similar conditions. (*See* Am. Compl. 47.)

The Amended Complaint states a claim that Defendant retaliated against Plaintiff for requesting family and medical leaves under the FMLA. Therefore, Defendant's motion to dismiss the Seventh Cause of Action should be denied.

### 2. Interference Under the FMLA

Section 2615(a)(1) of the FMLA states, "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). The regulations promulgated pursuant to the FMLA explain that "[i]nterfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220(b).

In the Amended Complaint, Plaintiff alleges that he made numerous requests for FMLA leaves (i) to care for his newborn child, (ii) to care for his father, and (iii) to treat his wrist condition. (Am. Compl. ¶¶ 24, 28, 62, 69, 74, 77) Defendant Mizuho so successfully interfered with Plaintiff's rights that he no longer explicitly requested time off to treat his wrist condition and, instead, requested a flexible schedule so he could receive physical therapy or merely rest his wrists during the day. (Am. Compl. ¶¶ 74, 77) Plaintiff's regular practice of wearing wrist splints at work made it clear to Defendant Mizuho that his wrist condition was chronic and, in the absence of his requested leaves of absence, Plaintiff was unable to receive appropriate treatment for his condition.

Moreover, that Plaintiff continued wearing wrist splints at work through to the termination of his employment effectively put Defendant Mizuho on notice that he continued to need a medical leave of absence to treat his chronic condition.

The Eighth Cause of Action of the Amended Complaint states a legally cognizable claim for Interference in violation of the FMLA. Therefore, Defendant's Motion to Dismiss the Eighth Cause of Action should be denied.

### G.  The Amended Complaint States Claims for Disability Discrimination and Retaliation

Defendant argues that Plaintiff's disability discrimination and retaliation claims should be limited to those discriminatory and retaliatory acts that occurred in the three years preceding the filing of the complaint in this action. However, under the continuing violation exception, this Court should allow Plaintiff to seek redress for the acts of discrimination and retaliation that predate the three-year statute of limitations period. The discriminatory and retaliatory actions include:

- Refusing Plaintiff the reasonable accommodation of ergonomic desk equipment and refusing to engage in the interactive process concerning the desk equipment (Am. Compl. ¶ 25);

- In December 2019, refusing Plaintiff the reasonable accommodation of breaks during the day to rest his wrists and refusing to engage in the interactive process concerning the request (*id.* ¶ 62);

- In February 2020, refusing Plaintiff the reasonable accommodation of a flexible work schedule so he could get to physical therapy appointments and refusing to engage in the interactive process concerning the request. (*id.* ¶¶ 71-72); and

- In February 2021, refusing Plaintiff the reasonable accommodation of pacing his work and taking breaks throughout the day and refusing to engage in the interactive process concerning the request (*id.* ¶ 77).

- Retaliating against Plaintiff by deriding and mocking him for requesting the reasonable accommodation of a flexible schedule so he could attend physical therapy treatments (id. ¶¶ 62, 74);

- Retaliating against Plaintiff by treating his physical "issues" as if they were a "deficiency" for Defendant Mizuho (id. ¶ 77);

- Retaliating against him by assigning him trivial and administrative tasks, such as organizing issue trackers and reconciling spreadsheets (Am. Compl. ¶¶ 39, 59);

- Retaliating against Plaintiff by passing him over for promotions and transfer opportunities for which he was qualified (id. ¶¶ 19, 20, 40, 41, 44, 46);

- Retaliating against Plaintiff by micromanaging and gaslighting him (id. ¶ 55); and

- Retaliating against Plaintiff by scapegoating him for real and imaginary issues (id. ¶¶ 57, 66).

As many of the discriminatory and retaliatory actions described above took place prior to the expiration of the statute of limitations and are part of a continuing policy and practice of discrimination and retaliation on the basis of Plaintiff's disabilities, the earlier violations are actionable.

The Ninth Cause of Action of the Amended Complaint states a legally cognizable claim for disability discrimination and retaliation under the NYSHRL and NYCHRL. Therefore, Defendant's Motion to Dismiss the Ninth Cause of Action should be denied.

### H. Breach of Contract

Defendant Mizuho argues that Plaintiff "alleges 'breach of contract' only in the most conclusory fashion." (Defendant's Brief p. 21) Further, Defendant argues that Plaintiff failed to identify "the specific contract terms supposedly at issue and the nature of the breach of those terms." (*Id.*) Even more troubling, Plaintiff has not identified whether the contract is written or oral. (*Id.*)

This is utter balderdash. The Amended Complaint states that Plaintiff and Defendant Mizuho had a contract for employment, "whereby Plaintiff performed services for Defendant and, in exchange, Defendant paid Plaintiff a salary and benefits including paid sick days." (Am. Compl. ¶¶ 159-163) It is a simple bilateral agreement, with consideration on both sides. Still, Plaintiff

commits 22 pages to describing the employment relationship between Defendant Mizuho and Plaintiff, plainly identifies the contract term and the nature of Defendant Mizuho's breach.

Simply, Plaintiff had an employment contract with Defendant Mizuho: Plaintiff performed work for Defendant Mizuho; Defendant Mizuho compensates Plaintiff. As set forth in the Amended Complaint, the compensation included paid sick days.

Plaintiff performed under the contract. Defendant Mizuho breached by refusing to let Plaintiff use his sick days and by insisting that he work while using sick days. (Am. Compl. ¶¶ 159-163.) Admittedly, Plaintiff does not identify whether the contract is written or oral. This mere fact, however, is immaterial at the pleading stage and is certainly something the parties will ascertain in discovery.

The Tenth Cause of Action of the Amended Complaint alleges facts sufficient to state a legally cognizable claim and, therefore, Defendant Mizuho's motion to dismiss the Tenth Cause of Action should be denied.

## V.    CONCLUSION

For the foregoing reasons, Defendant Mizuho's Motion to Dismiss should be denied, except as to the Fourth and Eleventh Causes of Action.

Dated: New York, New York
        January 24, 2024

Respectfully submitted,

GODDARD LAW PLLC

/s/ Frances Codd Slusarz
Megan S. Goddard
Frances Codd Slusarz
39 Broadway, Suite 1540
New York, NY 10006
Tel: 646 964-1178
megan@goddardlawnyc.com
frances@goddardlawnyc.com