UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x
                                    :

DAVID KURTANIDZE,            :    Case No. 23-cv-8716 (PAE)

                    *Plaintiff*,      :

                - v -           :

MIZUHO BANK, LTD.,             :

                    *Defendant*.     :

------------------------------------- x

---

## REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS CLAIMS ASSERTED IN PLAINTIFF'S AMENDED COMPLAINT

---

EPSTEIN BECKER & GREEN, P.C.
875 Third Avenue
New York, NY 10022
Tel: (212) 351-4620

*Attorneys for Defendant*

**TABLE OF CONTENTS**

A.  Plaintiff's assertion that he "mistakenly" alleged "national origin" discrimination but meant to say "race" discrimination does not salvage his Section 1981 claims ................... 1

B.  Plaintiffs' allegations do not support an inference that he suffered any adverse employment action because of his national origin or race ......................................................... 2

    1.  The allegations do not support an inference of discrimination based on Plaintiff's <u>Georgian</u> national origin ................................................................. 2

    2.  The use of Japanese language by Plaintiffs' managers does not support a claim .......... 3

    3.  Plaintiff's various allegations of "discriminatory treatment" do not state a claim ........ 4

C.  The "continuing violation" doctrine does not save Plaintiff's untimely claims ....................... 7

D.  Plaintiff's alleged request to use English does not support any retaliation claim ..................... 9

E.  Plaintiff's breach of contract claim is non-cognizable, as is Plaintiff's defense of it .............. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Avent v. Progressive Cas. Ins. Co.*,
   2021 WL 168500 (S.D.N.Y. Jan. 19, 2021) ............................................................................ 2

*Barberan v. Nationpoint*,
   706 F. Supp. 2d 408 (S.D.N.Y. 2010) .................................................................................... 6

*Berman v. Sugo LLC*,
   580 F. Supp. 2d 191 (S.D.N.Y. 2008) .................................................................................. 10

*Betances v. Prestige Decorating & Wallcovering, Inc.*,
   2006 WL 963877 (S.D.N.Y. Apr. 13, 2006) .......................................................................... 4

*Brown v. City of Oneonta, New York*,
   221 F.3d 329 (2d Cir. 2000) ................................................................................................... 4

*Caskey v. Cnty. of Ontario*,
   560 F. App'x 57 (2d Cir. 2014) .............................................................................................. 6

*Chukwueze v. NYCERS*,
   891 F. Supp. 2d 443 (S.D.N.Y. 2012) .................................................................................... 8

*CreditSights, Inc. v. Ciasullo*,
   2008 WL 4185737 (S.D.N.Y. Sept. 5, 2008) ....................................................................... 10

*Cruz v. Coach Stores, Inc.*,
   202 F.3d 560 (2d Cir. 2000) ............................................................................................. 5, 9

*Doe v. Anonymous Inc.*,
   2019 WL 2616904 (S.D.N.Y. June 25, 2019),
    *aff'd*, 794 F. App'x 129 (2d Cir. 2020) ................................................................................. 7

*E.E.O.C. v. Sephora USA, LLC*,
   419 F. Supp. 2d 408 (S.D.N.Y. 2005) .................................................................................... 4

*Elmenayer v. ABF Freight Sys., Inc.*,
   318 F.3d 130 (2d Cir. 2003) ................................................................................................... 7

*Frierson v. NASDAQ/AMEX Mkt. Grp.*,
   2001 WL 262598 (S.D.N.Y. Mar. 14, 2001) ......................................................................... 5

*Garcia v. Gloor*,
   618 F.2d 264 (5th Cir.1980) .................................................................................................. 4

*Gonzalez v. Hasty*,
　802 F.3d 212 (2d Cir. 2015)..........................................................................................................7

*Govia v. Century 21, Inc.*,
　140 F. Supp. 2d 323 (S.D.N.Y. 2001)...........................................................................................7

*Inman v. City of New York*,
　2011 WL 4344015 (S.D.N.Y. Sept. 13, 2011)........................................................................9, 10

*Kouassi v. New York City Dep't of Homeless Servs.*,
　2017 WL 4342093 (E.D.N.Y. Sept. 25, 2017) ..............................................................................5

*Lavender v. Verizon New York Inc.*,
　2023 WL 1863245 (E.D.N.Y. Feb. 9, 2023)..................................................................................8

*Levy v. Bessemer Tr. Co.*,
　1997 WL 431079 (S.D.N.Y. July 30, 1997) ................................................................................10

*Little v. Nat'l Broad. Co.*,
　210 F. Supp. 2d 330 (S.D.N.Y. 2002)............................................................................................6

*MacDonnell v. Liberty Cent. Sch. Dist.*,
　115 F. App'x 489 (2d Cir. 2004) ...................................................................................................8

*McGuirk v. Swiss Re Fin. Servs., Corp.*,
　2016 WL 10683305 (S.D.N.Y. June 17, 2016),
　　*aff'd,* 699 F. App'x 55 (2d Cir. 2017)......................................................................................8, 9

*Nat'l R.R. Passenger Corp. v. Morgan*,
　536 U.S. 101 (2002)......................................................................................................................8

*Patane v. Clark*,
　508 F.3d 106 (2d Cir. 2007)..........................................................................................................6

*Perard v. Jamaica Hosp. Med. Ctr.*,
　2020 WL 5633153 (E.D.N.Y. Sept. 20, 2020) .............................................................................3

*Ponniah Das v. Our Lady of Mercy Med. Ctr.*,
　2002 WL 826877 (S.D.N.Y. Apr. 30, 2002),
　　*aff'd,* 56 F. App'x 12 (2d Cir. 2003)..........................................................................................3

*Posner v. Minnesota Min. & Mfg. Co.*,
　713 F. Supp. 562 (E.D.N.Y. 1989) .............................................................................................10

*Scroxton v. Town of Southold*,
　2010 WL 1223010 (E.D.N.Y. Mar. 24, 2010) ..............................................................................7

*Shah v. Wilco Sys.*,
    76 F. App'x 383 (2d Cir. 2003) ...............................................................................................2

*Soberal-Perez v. Heckler*,
    717 F.2d 36 (2d Cir. 1983)......................................................................................................4

*Trinidad v. NYC Dep't of Correction*,
    423 F. Supp. 2d 151 (S.D.N.Y. 2006).....................................................................................7

*Velasquez v. Goldwater Mem'l Hosp.*,
    88 F. Supp. 2d 257 (S.D.N.Y. 2000).......................................................................................4

*Whalen v. CSC TKR, LLC*,
    2011 WL 6965740 (S.D.N.Y. Dec. 28, 2011) .....................................................................7, 8

*Wolff v. Rare Medium, Inc.*,
    171 F. Supp. 2d 354 (S.D.N.Y. 2001)...................................................................................10

**Statutes**

42 U.S.C. § 1981...............................................................................................................................1, 2

**Other Authorities**

F.R.C.P. 8(e)(2)......................................................................................................................................6

Plaintiff's opposition to Mizuho's Rule 12(b)(6) motion (the "Opposition") concedes that his Fourth and Eleventh Causes of Action should be dismissed. (DE 28 at 8 n.3.) As explained further in this reply, the remainder are subject to dismissal as well.

### A. Plaintiff's assertion that he "mistakenly" alleged "national origin" discrimination but meant to say "race" discrimination does not salvage his Section 1981 claims.

As Plaintiff waited over two years after his employment ended in 2021 to claim discrimination since 2017, he was foreclosed from bringing Title VII claims. As such, he attempts to squeeze his claims into 42 U.S.C. § 1981. Whereas he first cast his 1981 claims as "national origin" claims, he now attempts to recast them as "race" claims because 1981 is confined to race. Plaintiff concedes that the Court need not ignore prior pleadings and context, but argues that, even though he purportedly suffered discrimination "because he is white", "[t]rapped by a modern concept of race, [he] mistakenly referred to this as 'national origin' in the original complaint." (DE 28 at 8-9 (page references are to ECF ribbon).) That Plaintiff's counsel, a firm that *specializes* in employment discrimination matters, "mistakenly" conflated race and national origin is implausible and need not be accepted. If Plaintiff thought he had a basis to claim discrimination because he is *white*, he would have done so from the outset. His belated assertion is a *post hoc* invention to try to maintain his 1981 claims because their limitation period is longer than his other untimely claims.

Most importantly, Plaintiff's avowal that he *meant* to plead that he suffered discrimination "because he is white" is belied by the factual allegations in the Amended Complaint. While the original complaint made *no* reference to the fact that Plaintiff is white, the Amended Complaint includes only *one* such reference—and it is non-substantive. Plaintiff simply added the emphasized language to the following sentence that appeared in the original complaint:

> [T]here was no opportunity for [Plaintiff], or his non-Japanese Co-worker . . . to apply for the promotion because they were Americans **and he was white**. (*Compare* DE 1-1 ¶ 23 *with* DE 23 ¶ 20.)

1

Plaintiff concedes that, "[f]or his Section 1981 claims, [he] must 'allege facts that would permit the Court to infer … that *race* was a *but-for* cause'" of alleged adverse actions.[1] And yet, immediately after that concession, the Opposition explains how the pleading "describes an environment that greatly favored *Japanese-speaking employees* over all others"—further reinforcing that his grievance is not about *race* discrimination. (DE 28 at 10.) Plaintiff's pleading does not come close to supporting an inference of "race" discrimination "because he is white." Neither his addition of "and he was white" to one paragraph, nor peppering the pleading with the phrase "non-Asian" (it used to say only "non-Japanese"[2]), can sustain his 1981 claims.[3]

**B. Plaintiffs' allegations do not support an inference that he suffered any adverse employment action because of his national origin or race.**

**1. The allegations do not support an inference of discrimination based on Plaintiff's <u>Georgian</u> national origin.**

Plaintiff alleges that he is of "Eastern European national origin"—specifically, Georgian. (DE 23 ¶ 2, 7.) As the Second Circuit explained in *Shah v. Wilco Sys.,* because Plaintiff "has conceded that [his] national origin is [Georgian]", "[he] can, therefore, claim *only* national origin discrimination as a[] [Georgian], rather than as an American." 76 F. App'x 383, 385 (2d Cir. 2003). In *Shah,* the Second Circuit affirmed dismissal of the plaintiff's federal and NYCHRL "national origin" claims because her allegations did not warrant an inference of discrimination based on her *Indian* national origin, as opposed to being an "American."[4] The same is true of Plaintiff here.

In his Opposition, Plaintiff contends that he suffered discrimination because of his "Eastern European" accent (DE 28 at 13-14)—a refence to his allegation that his manager "objected to [his]

---

[1] DE 28 at 10 (*quoting Avent v. Progressive Cas. Ins. Co.*, 2021 WL 168500, at *4 (S.D.N.Y. Jan. 19, 2021).)

[2] *Compare* DE 1-1 ¶¶ 23, 56, 60, 61, 62 (referring only to "non-Japanese" employees) *with* DE 23 ¶¶ 47, 53, 57, 58, 59 (same paragraphs now also referring to "non-Asian" employees).

[3] The same is true of Plaintiff's state and city law claims to the extent they are based on race discrimination.

[4] *Id*. (emphasis added) (observing that "the Supreme Court has defined 'national origin' in this context to mean 'the country where a person was born, or, more broadly, the country from which his or her ancestors came.'").

2

Georgian-accented English and assigned [his] Co-worker . . . to speak at meetings in Plaintiff's stead, because her 'English was more clear.'" (DE 23 ¶ 23.) This is the pleading's **only** reference to Plaintiff's Georgian national origin—not one other allegation *purports* to suggest that Plaintiff was mistreated because he is of Georgian national origin. Indeed, Plaintiff alleges that he and his colleague were discriminated against "because they were Americans"—which is *not* his national origin. (*Id*. at ¶ 20.) Plaintiff's single allegation regarding his accent cannot warrant inferring that any alleged adverse action was motivated by discriminatory animus based on his Georgian national origin.[5] Accordingly, he cannot sustain a national origin-based claim under *any* statute.

### 2. The use of Japanese language by Plaintiffs' managers does not support a claim.

Plaintiff's Opposition encapsulates the *crux* of his discrimination theory as follows: "In the Amended Complaint, Plaintiff describes an environment that greatly favored Japanese-*speaking* employees over all others." (DE 28 at 10 (emphasis added).) He complains that "important business issues were discussed exclusively in Japanese, even when non-Japanese speaking employees were present[.]" (*Id*.) Plaintiff's grievance regarding the use of Japanese language in the workplace cannot underpin his discrimination claims as a matter of law.

Plaintiff cites no authority for the proposition that a discrimination claim may be sustained, under *any* statute, on the premise that a corporation *allowed* individuals who share a common primary language that is not English to use that language. Indeed, Plaintiff effectively argues that Mizuho should have imposed an "English-only" policy or otherwise prohibited Japanese persons from speaking to one another in that language. But such prohibitions invite claims that are simply

---

[5] *See, e.g., Ponniah Das v. Our Lady of Mercy Med. Ctr*., 2002 WL 826877, at *10 (S.D.N.Y. Apr. 30, 2002) ("That [plaintiff's supervisor] said that she could not understand [his] accent does not support a claim of discrimination."), *aff'd,* 56 F. App'x 12 (2d Cir. 2003); *Perard v. Jamaica Hosp. Med. Ctr*., 2020 WL 5633153, at *16 (E.D.N.Y. Sept. 20, 2020) ("Evidence that employees in a supervisory role referenced plaintiff's accent and difficulty in understanding plaintiff is generally insufficient to establish discriminatory animus.").

the flipside of Plaintiff's claim. Employees for whom English is not their primary language have occasionally argued that an English language mandate is discriminatory, and courts have acknowledged that one *might* be able to state a claim where such a mandate is selectively enforced against certain protected groups.[6] But the rule in the Second Circuit is that because language does not equate to national origin, claims based on exclusion because of, or by virtue of, language are non-actionable.[7] Language is not an immutable characteristic; "[n]either the statute nor common understanding equates national origin with the language that one chooses to speak."[8] Neither law nor sound policy, then, supports placing employers between a rock and a hard place by endorsing Plaintiff's novel assertion that employers may be liable for not compelling the use of English.

Moreover, even if such a claim existed *in theory*, Plaintiff's allegations that his Japanese managers conferred in their shared primary language would not support his claims. He must plead facts warranting an inference of discriminatory intent.[9] That Japanese people chose to speak the Japanese language to one another—whether or not in Plaintiff's presence—does not *remotely* warrant an inference that they did so out of discriminatory animus.

   **3. Plaintiff's various allegations of "discriminatory treatment" do not state a claim.**

   *Alleged discriminatory remarks.* Plaintiff's claims are largely predicated on his conclusory "belief" that adverse actions would not have occurred "had Plaintiff been Japanese." (*See, e.g*, DE

---

[6] *See, e.g., Velasquez v. Goldwater Mem'l Hosp.,* 88 F. Supp. 2d 257, 262-263 (S.D.N.Y. 2000).

[7] *See Soberal-Perez v. Heckler*, 717 F.2d 36, 41–42 (2d Cir. 1983) (upholding dismissal of civil rights claims based on alleged discrimination against Hispanics by virtue of exclusive use of English, observing that "[a] classification is implicitly made, but it is on the basis of language . . . and not on the basis of race, religion or national origin" and that a "preference for English over all other languages" was not actionable); *see also Betances v. Prestige Decorating & Wallcovering, Inc.*, 2006 WL 963877, at *2 (S.D.N.Y. Apr. 13, 2006) (plaintiff could not sustain a claim of national origin discrimination despite manager's alleged statement to plaintiff that "if you don't know English you don't have the right to work in this company," because the alleged statement "does not suggest that plaintiff was singled out due to his national origin" and "[a]t best, it suggests animus towards non-English speakers, who are not a protected class").

[8] *Velasquez,* 88 F. Supp. 2d at 262 (quoting *Garcia v. Gloor,* 618 F.2d 264, 268 (5th Cir.1980)).

[9] *See, e.g., Brown v. City of Oneonta, New York*, 221 F.3d 329, 339 (2d Cir. 2000) ("Section 1981 . . . only prohibits intentional racial discrimination"); *E.E.O.C. v. Sephora USA, LLC*, 419 F. Supp. 2d 408, 414 n.11 (S.D.N.Y. 2005).

23 at ¶ 45). He argues, though, that he has alleged remarks to support inferring discrimination. (DE 28 at 11.) Each such remark was allegedly made by Satoshi Kinoshita in or before "mid-August 2019" (*see* DE 23 at ¶¶ 33-36), and, by Plaintiff's own account, Mr. Kinoshita was replaced as the leader of Plaintiff's team in September 2019 (*id.* at ¶¶ 40-43). The pleading makes no reference to Mr. Kinoshita after this time, and does not allege that his successor, Jumpei Yoshida, made any similar remarks—it states only, vaguely, that Mr. Yoshida was "cold" and "disrespectful." (*Id.* ¶ 51.) Setting aside the content of the purported remarks, the latest allegedly occurred nearly *two years* before Plaintiff's termination in April 2021. Plaintiff pleads *no* factual allegations to support inferring that termination was motivated by race or national origin-based discriminatory animus.

*"Passed over" for promotion.* Plaintiff's Opposition repeatedly cites that Mizuho "passed him over for promotion" (DE 28 at 9-26), but his allegations do not support a claim. Even if his allegations were timely (and they are not[10]) an employee claiming non-promotion as an "adverse employment action" must allege that he "applied for and was denied promotion to a position for which []he was qualified[.]" *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 (2d Cir. 2000). Hence, in *Frierson v. NASDAQ/AMEX Mkt. Grp.*, the court dismissed "failure to promote" discrimination claims where "defendant's promotion procedures and how they were not afforded to plaintiff [were] not plead with any particularity in the complaint," and "[a]ll the complaint state[d] relevant to this point [was] that plaintiff was *continuously passed over for promotion[.]*" 2001 WL 262598, at *2 (S.D.N.Y. Mar. 14, 2001) (emphasis added). As in *Frierson*, Plaintiff's vague complaint here is that he was "continuously passed over for promotion."[11] Plaintiff fails to allege even that he raised with his managers the *prospect* of his promotion, let alone that he in any sense *applied* for

---

[10] The pleading alleges that Plaintiff did not receive promotions on two occasions in 2018 and 2019, respectively, both of which fall outside of the NYSHRL and NYCHRL three-year limitation periods. (*See* DE 23 ¶¶ 19-20; 40.)

[11] *Id.; see also Kouassi v. New York City Dep't of Homeless Servs.*, 2017 WL 4342093, at *4 (E.D.N.Y. Sept. 25, 2017) (dismissing discrimination claim where plaintiff failed "to allege that he applied for any promotions").

5

one. His conclusory assertions that he had no "opportunity" to, or was not "permitted" to (in some unstated manner), seek promotion do not excuse this fundamental defect. (*See* DE 23 ¶¶ 20, 42.)

*Unsuccessful transfer attempt.* Plaintiff also complains that he was denied a transfer. (DE 28 at 15-26.) Specifically, "in or around September 2019," he allegedly applied to transfer to a "different group" but "the position was filled by an outside consultant." (DE 23 ¶¶ 43-44.) The allegation is untimely, but even more fundamentally, there is *no* basis to infer discrimination as Plaintiff does not even allege the race or national origin of the person who obtained the position.

*Exclusion from (or invitation to) meetings.* Plaintiff's Opposition points to discrimination by being "excluded . . . from meetings and discussions pertinent to his job[.]" (DE 28 at 9.) Plaintiff also alleges that it was discriminatory to *invite* him to "unnecessary" meetings. (*See* DE 23 ¶¶ 55, 75.) Setting aside the contradiction, these allegations do not qualify as adverse actions because they do not reflect a "materially adverse change in the terms and conditions of employment."[12]

*Assignment of "administrative" responsibilities.* Plaintiff's Opposition states that he was "assigned administrative and low-level tasks" because of his race or national origin. (DE 28 at 15.) This contradicts his pleading, which frames this expressly, and exclusively, as retaliation for taking paternity leave.[13] (*See* DE 23 ¶ 39 and corresponding header.) And although "*significantly diminished* material responsibilities" may be an adverse action,[14] Plaintiff's allegations do not support that inference. Additionally, the change in assignments is alleged to have occurred in August or September 2019—outside the applicable limitation periods. (*See* DE 23 at ¶¶ 33, 39.)

---

[12] *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007); *see also Little v. Nat'l Broad. Co.,* 210 F. Supp. 2d 330, 382 (S.D.N.Y. 2002) (plaintiff's allegation that her assignment was "less prestigious" than assignments given to white males was not an "adverse employment action," because "[t]he mere fact that NBC sometimes offered her such opportunities does not make such assignments a 'term or condition' of her employment").

[13] While F.R.C.P. 8(e)(2) permits pleading alternative theories, it "cannot be construed as an invitation to incoherent, self-contradictory pleadings" and does not "grant[] plaintiffs license to plead inconsistent assertions of fact." *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 413 n.3 (S.D.N.Y. 2010).

[14] *Caskey v. Cnty. of Ontario*, 560 F. App'x 57, 59 (2d Cir. 2014) (emphasis added).

### C. The "continuing violation" doctrine does not save Plaintiff's untimely claims.

Plaintiff's discrimination and retaliation claims are largely subject to dismissal because they are barred by the applicable limitation periods, on the face of the pleading. (*See generally* DE 25.) His invocation of the "continuing violation" doctrine to save his untimely claims is misplaced.

"[T]he continuing violation doctrine is *heavily disfavored* in the Second Circuit and courts have been loath to apply it . . . ."[15] Plaintiff nevertheless argues that the doctrine should apply because he has alleged that the purported discriminatory conduct "continued throughout Plaintiff's tenure at Defendant Mizuho," and he continuously suffered the impact of his non-promotion, denial of leave, etc. (*See* DE 28 at 16, 19-21.) But "[t]o permit plaintiff to invoke the 'continuing violation' doctrine in such circumstances would subvert the underlying purpose of the time limit, which is to ensure expedition in the filing and handling of claims of discrimination."[16] Rather, the application is *much* narrower; "[t]he exception usually applies only in those cases involving specific discriminatory policies or mechanisms, such as discriminatory seniority lists or employment tests."[17] As the Second Circuit has stated: "The continuing violation doctrine . . . applies *not to discrete unlawful acts, even where those discrete acts are part of a serial violation,* but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment."[18] Contrary to Plaintiff's theory, "that wrongful acts may have a continuing impact is not sufficient to find a continuing violation."[19]

---

[15] *Trinidad v. NYC Dep't of Correction*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006) (emphasis added); *see also Doe v. Anonymous Inc.*, 2019 WL 2616904, at *4 (S.D.N.Y. June 25, 2019), *aff'd*, 794 F. App'x 129 (2d Cir. 2020).

[16] *Govia v. Century 21, Inc.,* 140 F. Supp. 2d 323, 325 (S.D.N.Y. 2001) (quotations omitted) (brackets removed).

[17] *Scroxton v. Town of Southold*, 2010 WL 1223010, at *4 (E.D.N.Y. Mar. 24, 2010).

[18] *Gonzalez v. Hasty,* 802 F.3d 212, 220 (2d Cir. 2015) (emphasis added) (brackets removed).

[19] *Whalen v. CSC TKR, LLC,* 2011 WL 6965740, at *4 (S.D.N.Y. Dec. 28, 2011); *see also Elmenayer v. ABF Freight Sys., Inc.,* 318 F.3d 130, 135 (2d Cir. 2003) ("Although the *effect* of the employer's rejection [of an accommodation request] continues to be felt by the employee for as long as he remains employed, that continued effect is similar to the continued effect of being denied a promotion or denied a transfer").

"Discrete acts of discrimination, including *termination*, *failure to promote*, *denial of transfer* or refusal to hire, as well as disparate pay, *denials of accommodation* and performance evaluations, are not considered to be 'continuing violations,' even if a plaintiff has experienced more than one of them over a period of time."[20] As to denials of accommodation, courts have held that not only are they discrete acts to which "continuing violation" does not apply,[21] but, quite the opposite: "repeated requests for the same accommodation" will be *dated back to the original request*.[22] Likewise, courts have held that there is "no merit" to the argument that *denials of requests for leave* are subject to "continuing violation."[23] The Second Circuit has held that the same is true of *changes in assignments or responsibilities* and *performance critiques*.[24] "Each [such] discriminatory act starts a new clock for filing charges alleging that act" and, "[t]herefore, a plaintiff must file h[is] lawsuit . . . as to each such discrete act within the relevant period of limitations." *McGuirk*, 2016 WL 10683305, at *9 (quotations omitted). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 102 (2002).

Plaintiff's Amended Complaint is, as Judge McMahon labeled the complaint in *McGuirk*, the quintessential "kitchen sink" pleading that alleges a litany of discrete purported adverse

---

[20] *McGuirk v. Swiss Re Fin. Servs., Corp.,* 2016 WL 10683305, at *9-10 (S.D.N.Y. June 17, 2016) (emphasis added), *aff'd,* 699 F. App'x 55 (2d Cir. 2017) (dismissing plaintiff's complaint, which "contain[ed] a 'kitchen sink' list of alleged bases for discrimination against plaintiff during her seven years" of employment, in its entirety, and rejecting Plaintiff's invocation of the "continuing violation" doctrine) (quotations omitted).

[21] *See, e.g., Lavender v. Verizon New York Inc.*, 2023 WL 1863245, at *14 (E.D.N.Y. Feb. 9, 2023) ("An employer's rejection of an employee's proposed accommodation . . . does not give rise to a continuing violation[.]").

[22] *Whalen*, 2011 WL 6965740, at *3-4 (plaintiff time-barred from "fil[ing] a claim based on [] employer's denial of an accommodation only after [he] had asked for the same accommodation several times over . . . seven years[.]").

[23] *Chukwueze v. NYCERS*, 891 F. Supp. 2d 443, 451 (S.D.N.Y. 2012) ("Plaintiff does invoke th[e] [continuing violation] exception, but there is no merit to his argument with respect to the claims that Defendant discriminated against him in connection with his requests for leave. . . . Those allegations of discrimination are plainly 'discrete' acts and therefore not subject to the 'continuing violation' exception.") (citations omitted).

[24] *MacDonnell v. Liberty Cent. Sch. Dist.,* 115 F. App'x 489, 491 (2d Cir. 2004) ("The untimely events that MacDonnell alleges, a change in job responsibilities and 'speed memos' that . . . directed her to improve her performance, are 'discrete discriminatory acts' that do not constitute a continuing violation.") (citations omitted).

actions—non-promotion, denial of transfer, leave and accommodation, change in assignments, termination—not susceptible to the continuing violation doctrine.[25]

### D. Plaintiff's alleged request to use English does not support any retaliation claim.

All of Plaintiffs' retaliation claims based on an objection to race or national origin discrimination require him to plead factual allegations that, if proved, would establish he engaged in protected activity, that Mizuho knew of the activity, and a causal connection between the activity and an adverse action.[26] As discussed in Mizuho's moving brief, Plaintiff's pleading fails in all respects. His arguments to the contrary are unavailing.

Plaintiff's original complaint was devoid of any allegation of protected activity regarding race or national origin. He attempted to cure this defect in his Amended Complaint by claiming that he "opposed the exclusion of non-Japanese speaking employees by requesting repeatedly that Defendant conduct business discussions in English[.]" (DE 23 ¶ 21.) Plaintiff concedes that "'protected activity' refers to action taken to protest or oppose *statutorily prohibited discrimination*."[27] Managing to conflate race, national origin, *and* language all in one assertion, he contends that his request constituted "protected activity" because "[t]he Japanese language is characteristic of the Japanese ethnicity" and "excluded his non-Japanese race[.]" (DE 28 at 15.) As noted, Plaintiff is wrong: language is *not* a protected characteristic and a request to use English cannot be equated to an objection to race *or* national origin discrimination. (*Supra* at 3-4.)

---

[25] *McGuirk*, 2016 WL 10683305, at *10. And as Judge McMahon held in *McGuirk*, despite the Amended Complaint's use of the phrase "hostile work environment," a list of such discrete acts "do not, taken together, constitute a 'hostile work environment'" claim. *Id*. Tellingly, Plaintiff's Opposition makes no reference to "hostile work environment."

[26] *See, e.g., Inman v. City of New York,* 2011 WL 4344015, at *7-8 (S.D.N.Y. Sept. 13, 2011) (dismissing NYCHRL and NYSHRL retaliation claims where "[e]ven if Plaintiff herself subjectively believed that she was complaining of racially discriminatory treatment," plaintiff's factual allegations did not "suggest that Defendants would have been aware that Plaintiff was complaining of racial discrimination.").

[27] DE 28 at 14 (*citing Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000)).

Further, Plaintiff's request that meetings be conducted only in English certainly does not warrant an inference that Mizuho *understood* Plaintiff to be objecting to discrimination because he is white or Georgian. *See, e.g., Inman,* 2011 WL 4344015, at *8. In addition, as explained in Mizuho's moving brief, that Plaintiff does not say to *whom* he directed the requests or *when*, but merely states he made them of "Defendant," precludes inference of a causal connection. (*See* DE 25 at 17-20.) His argument that this deficiency is excused because "one can infer" the request was directed to "management-level employees" (DE 28 at 15) does not pass the straight-face test and contradicts authority that requires pleading *at least* the "who" and "when" of protected activity.

### E. Plaintiff's breach of contract claim is non-cognizable, as is Plaintiff's defense of it.

Plaintiff admits that he has not alleged the most basic fact of the purported "contract": whether it was written or oral. (DE 28 at 26.) He says he intends to figure that out in discovery (*id*. at 27)—an admission that he is unaware of any "contract" and asserted a claim without basis. In *Berman v. Sugo LLC*, the court dismissed a contract claim where the pleading failed to allege basic facts regarding the breach—"[m]ost strikingly," whether "the contract at issue was oral and that the parties intended to be bound by an oral agreement," which is necessary for respondent to "know whether to plead [certain] affirmative defenses." 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008). Further, courts consistently dismiss claims that identify the contract (*more* than Plaintiff has done) but not the *provision* breached.[28] Plaintiff cites no support for his position that merely pleading the existence of an employment relationship is enough (DE 28 at 26-27), because it is contrary to law.

* * *

For the reasons stated herein, Mizuho respectfully reiterates the requests for relief set forth in the conclusion of its opening brief.

---

[28] *See, e.g., CreditSights, Inc. v. Ciasullo,* 2008 WL 4185737, at *11 (S.D.N.Y. Sept. 5, 2008); *Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001); *Levy v. Bessemer Tr. Co.,* 1997 WL 431079, at *5 (S.D.N.Y. July 30, 1997); *Posner v. Minnesota Min. & Mfg. Co.*, 713 F. Supp. 562, 563–64 (E.D.N.Y. 1989).

Dated: February 7, 2024
      New York, NY

Respectfully submitted,

**EPSTEIN BECKER & GREEN, P.C.**

_____
Edward M. Yennock
Jessica Giambrone Palmese
Sierra N. Hennessy
875 Third Avenue
New York, NY 10022
Tel: (212) 351-4620

*Attorneys for Defendant*